229 N.J. Super. 128 (1988)
550 A.2d 1272
MEDICAL SOCIETY OF NEW JERSEY AND NEW JERSEY ASSOCIATION OF OSTEOPATHIC PHYSICIANS AND SURGEONS, PLAINTIFFS-APPELLANTS,
v.
NEW JERSEY DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF CONSUMER AFFAIRS, STATE BOARD OF PHYSICAL THERAPY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 1988.
Decided December 6, 1988.
*129 Before Judges J.H. COLEMAN and BAIME.
Steven I. Kern argued the cause for appellant (Kern & Augustine, attorneys; Robert W. Savage on the brief).
Regina H. Nugent, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Regina H. Nugent on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
The Medical Society of New Jersey and the New Jersey Association of Osteopathic Physicians and Surgeons appeal from the action of the State Board of Physical Therapy, promulgating N.J.A.C. 13:39A-2.2(b). The contested regulation permits physical therapists to engage in examination and instruction without physician direction and authorizes modification of treatment, previously prescribed by a physician, when such modification is consistent with the directed treatment. Appellants contend that the regulation exceeds the scope of the Board's delegated authority and is ultra vires. We agree and reverse.
A brief description of the applicable statutory and regulatory provisions is necessary for a full understanding of the issue presented. The State Board of Physical Therapy (Board) was created by the Physical Therapist Licensing Act of 1983 (N.J.S.A. 45:9-37.11 et seq.). The Board is under the Division of *130 Consumer Affairs in the Department of Law and Public Safety. N.J.S.A. 45:9-37.15. The articulated objective of the statutory scheme and the principal function of the Board is the "regulation of the practice of physical therapy and the establishment of clear licensure standards." N.J.S.A. 45:9-37.12. In its findings, the Legislature declared that the Act was designed to protect the health and welfare of our citizens by "identifying to the public those individuals who are qualified and legally authorized to practice physical therapy." Ibid. In order to effectuate this statutory policy, the Board was empowered to "[r]eview the qualifications of applicants for licensure, [i]nsure the proper conduct and standards of examinations, [i]ssue and renew, [s]uspend, revoke or [refuse] to renew [licenses], [m]aintain [appropriate] records, ... and [p]romulgate rules and regulations necessary for the performance of its duties and the implementation of [the] [A]ct." N.J.S.A. 45:9-37.18.
Under the Act, a "physical therapist" is defined as "a person who is licensed to practice physical therapy ... [and who] shall provide physical therapy treatment to an individual upon the direction of a licensed physician, dentist or other health care practitioner authorized to prescribe treatment." N.J.S.A. 45:9-37.13(b). The term "physical therapy" is defined by N.J.S.A. 45:9-37.13(d) as the "health specialty concerned with the prevention of physical disability and the habilitation and rehabilitation of congenital or acquired physical disabilities resulting from, or secondary to, injury or disease." N.J.S.A. 45:9-37.14 defines the phrase "practice of physical therapy." That section provides as follows:
a. The practice of physical therapy shall include examination, treatment or instruction to detect, assess, prevent, correct, alleviate and limit physical disability, bodily malfunction and pain from injury, disease or other physical condition.
Physical therapy shall also include the evaluation, administration and modification of treatment and instruction, including, but not limited to, the use of physical measures, activities, agents and devices for preventive and therapeutic purposes; neurodevelopmental procedures; the performance and evaluation of tests and measurements; and the provision of consultative, educational and other advisory services for the purpose of preventing or reducing the incidence *131 and severity of physical disability, bodily malfunction and pain consistent with the practice of physical therapy.
b. Nothing in this section shall authorize the diagnosis of disease or the practice of medicine and surgery or chiropractic by any person not licensed to do so pursuant to chapter 9 of Title 45 of the Revised Statutes.
c. Nothing in this section shall authorize the practice of dentistry by any person not licensed to do so pursuant to chapter 6 of Title 45 of the Revised Statutes. [N.J.S.A. 45:9-37.14].
Pursuant to its rule-making authority, the Board proposed the promulgation of N.J.A.C. 13:39A-2.2 which, as originally drafted, read as follows:
(a) A licensed physical therapist may initiate physical therapy treatment, but only after having received physician direction.
(b) A licensed physical therapist may engage in the following activities and practices without physician direction.
1. Physical therapy examination;
2. Physical therapy instruction;
3. Modification of physical therapy treatment previously initiated upon physician direction. [17 N.J.R. 2356]
Following public comments, the Board proposed a revised version of the rule, permitting a physical therapist to conduct electromyographic testing, to the extent his or her training qualified him or her to do so, and to modify a physician's directed course of treatment where such modification is consistent with the initially prescribed treatment. 18 N.J.R. 1177(b). On October 14, 1986, after another period of public comment, the Board rejected subsection (a) of the proposed rule, but adopted subsection (b). The rule ultimately adopted reads in pertinent part:
(b) A licensed physical therapist may engage in the following activities and practices without physician direction.
1. Physical therapy examination, excluding electromyographic testing;
2. Physical therapy instruction;
3. Modification of physical therapy treatment previously initiated upon physician direction provided that the modification is consistent with that physician direction (for example, the physical therapist, in the exercise of his or her discretion, may determine to utilize a variety of modalities to effectuate the direction given by the physician). If the physical therapist wishes to alter a therapeutic plan in a manner not consistent with the initial physician direction, contact must be made with the patient's physician for the purpose of obtaining additional direction. [N.J.A.C. 13:39A-2.2(b)].
*132 The term "physical therapy examination" is defined by N.J.A.C. 13:39A-2.1 as:
includ[ing] a taking of a patient's history of complaint, a hands-on evaluation or assessment of objective symptoms presented as well as the utilization of tests and measures to assist the physical therapist in the evaluation of the patient's objective signs and symptoms including, but not limited to, the use of tests to assess postural alignment; joint mobility and function; muscle and nerve function, including electrophysiologic status; movement skill; gait; necessity for assistive devices; fit of orthoses and prostheses; cardiopulmonary status; sensory and motor function, including related pain and tenderness; and performance of activities required in daily living; but does not include the examination of any person conducted for the purpose of diagnosing any disease or organic condition. Nothing herein is intended to preclude a physical therapist from conducting an examination within the scope of his practice, consistent with his education credentials or taking a history which is designed to ascertain if contraindications to therapy may be present and thus the referral to a plenary licensed physician is warranted.
N.J.A.C. 13:39A-2.1 defines "physical therapy instruction" as:
includ[ing] the provision of consultative, educational or other advisory services for the purpose of preventing or reducing the incidence and severity of physical disability, bodily malfunction or pain from injury, disease or other physical condition or for the purpose of providing information to patients or groups of interested persons regarding the value of physical therapy agents and measures in general or with regard to specific physical conditions. Physical therapy instruction shall not be construed to include activities designed to offer specific therapeutic effect or benefit to a specified person. To the extent that instruction may involve any hands-on contact between the physical therapist and the person receiving physical therapy instruction, that contact shall be for demonstration purposes only.
The same rule defines "physical therapy treatment" in the following terms:
`Physical therapy treatment' includes the administration of physical therapy measures, activities, agents or devices, including but not limited to postural correction; joint mobilization; range of motion exercise; muscle and soft tissue stretching; muscle strengthening exercise; balance and coordination exercises; massage techniques; pre and post-natal exercises; growth and development programs; biofeedback techniques; perceptual training; electrophysiologic tests and modalities; pulmonary hygiene treatment; breathing exercises; postural drainage; gait training; hydrotherapy and paraffin bath when used for preventative and therapeutic purposes to correct or limit physical disorders or dysfunctions. [N.J.A.C. 13:39A-2.1].
Finally, "physician direction" is defined by N.J.A.C. 13:39A-2.1 as any of the following:

*133 1. Written prescription of a plenary licensed physician, or a dentist or a podiatrist, to the extent that the treatment prescribed is within the scope of his or her practice, or such other health care; practitioner authorized to prescribe treatment;
2. Documentation of physician clearance for the patient for treatment which may include a countersigning of the physical therapist's proposed plan of treatment;
3. Verbal prescription, in person or via telephone, which shall be memorialized by the prescriber in writing within two weeks. But, in no case, will physician direction be construed to have been provided on the basis of a patient's representation that he or she has obtained a physician's clearance.
Against this statutory and regulatory backdrop, the sole issue presented by this appeal is whether, as appellants contend, N.J.A.C. 13:39A-2.2(b) constitutes an ultra vires act by permitting a physical therapist to engage in examination or instruction without physician direction and by allowing modification of a course of treatment prescribed by a physician when such alteration is consistent with the directed treatment. Appellants argue that the regulation contravenes the statutory mandate, requiring that a physical therapist "shall provide physical therapy treatment to an individual [only] upon the direction of a licensed physician...." N.J.S.A. 45:9-37.13(b). They also contend that the regulation far exceeds the contemplation of the enabling statute by permitting physical therapists to engage in the unauthorized practice of medicine, contrary to N.J.S.A. 45:9-5.1. Conversely, the Board argues that the statutory definition of the "practice of physical therapy" contained in N.J.S.A. 45:9-37.11 consists of three wholly distinct and severable components, i.e., examination, treatment and instruction. So posited, the Board asserts that the restrictive language of N.J.S.A. 45:9-37.13(b), requiring that "physical therapy treatment" be administered only "upon the direction of a licensed physician," does not apply to examination and instruction.
We approach the issue presented keenly aware of the limited scope of our review powers. In a lengthy series of opinions, our Supreme Court has repeatedly emphasized that "[a]dministrative rules and regulations have in their support *134 the rebuttable presumption of validity if they come within the ambit of [the agency's] delegated authority." In re Weston, 36 N.J. 258, 263 (1961), cert. den. 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 84 (1962). See also New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561-564 (1978); In re Regulation F-22, Office of Milk Industry, New Jersey, 32 N.J. 258, 261-262 (1960); Flanagan v. Civil Service Department, 29 N.J. 1, 12 (1959). Cf. Franklin v. New Jersey Dept. of Human Services, 111 N.J. 1, 16 (1988). Although an administrative regulation "must be within the fair contemplation of the delegation of the enabling statute," Southern Jersey Airways v. Nat. Bk. of Secaucus, 108 N.J. Super. 369, 383 (App.Div. 1970), the legislative grant of authority "is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities." New Jersey Guild of Hearing Aid Dispensers v. Long, supra, 75 N.J. at 562. Toward that end, the courts "readily imply such incidental powers as are [reasonably] necessary to effectuate fully the legislative intent." Ibid. See also In re Suspension of Heller, 73 N.J. 292, 303 (1977); Cammarata v. Essex County Park Comm'n, 26 N.J. 404, 411 (1958). In sum, regulations issued by an administrative agency are cloaked with a presumption of legitimacy and should be sustained unless clearly ultra vires on their face. In re Regulation F-22, Office of Milk Industry, New Jersey, supra, 32 N.J. at 261-262.
Within this conceptual framework, our inquiry necessarily focuses upon whether the administrative regulation falls within the boundaries of the legislative delegation. Swede v. City of Clifton, 22 N.J. 303, 312 (1956). Administrative action "is of necessity restrained by the declared policy and spirit of the statute and the criteria and standards therein laid down, for a grant not thus confined would constitute a delegation of essential legislative power in contravention of constitutional limitations." Abelson's, Inc. v. N.J. State Board of Optometrists, 5 N.J. 412, 423 (1950). It is a corollary of this principle that "the rules and regulations ... cannot subvert or enlarge upon the *135 statutory policy...." Id. at 424. The distinction is between the making and the execution of the law.
Applying these principles, we are convinced that N.J.A.C. 13:39A-2.2(b) constitutes an "[e]xtrajurisdictional administrative act" and is thus void. Swede v. City of Clifton, supra, 22 N.J. at 312. Contrary to the Board's contention, we perceive nothing in the Act or in its statutory history suggestive of a legislative design to recognize three hermetically sealed, watertight components of physical therapy, i.e., examination, treatment and instruction. By creating this ethereal distinction, the Board seeks to remove the physician from perhaps the most critical aspect of the medical care of patients, i.e., the determination of the need for and lack of contraindication of physical therapy. Neither the statutory language nor the legislative history support such an abrupt and major change of our law.
The first legislative recognition of the role of physical therapists in our health care system can be traced to a 1903 amendment to the 1894 statutory scheme, regulating the practice of medicine. L. 1903, c. 228. The amendment provided in pertinent part that a "masseur or electrician, operating in each particular case under the specific direction of a regularly licensed physician or surgeon" was excepted from the general prohibition against the unlicensed practice of medicine. This limitation on the practice of physical therapy, requiring physician direction, was subsequently carried over and retained in various amendments adopted in 1915 (L. 1915, c. 271, § 6), 1921 (L. 1921, c. 221, § 3), 1935 (L. 1935, c. 226, § 2), 1939 (L. 1939, c. 115), 1943 (L. 1943, c. 74), 1944 (L. 1944, c. 167), and 1953 (L. 1953, c. 421).
In 1963, the Legislature established an examination and registration scheme for the regulation of physical therapists to be administered by the Board of Medical Examiners (L. 1963, c. 169). The statute created a "physical therapy advisory committee" in the Division of Consumer Affairs to assist the Board of Medical Examiners in establishing standards of practice. (L. *136 1963, c. 169, § 10). The legislation retained the restriction, as in prior statutes, that a "registered physical therapist" can administer care only "under the specific direction of a regularly licensed physician or surgeon." (L. 1963, c. 169, § 1).
The last legislative modification of the statutory scheme, prior to enactment of the present Act, occurred in 1975. The statute defined "physical therapist" as "a person who practices physical therapy, under the direction and supervision of a licensed physician, or a person who renders physical therapy services upon the direction of a licensed physician." N.J.S.A. 45:9-37.1(d). The phrase "physical therapy" was defined in the following terms:
`Physical therapy' or `physiotherapy' shall mean and include treatment of a human being by the use of exercise, massage heat, cold, water, radiant energy, electricity, or sound for the purpose of correcting or alleviating any physical condition or preventing the development of any physical disability; or the performance of appropriate tests and measurements, authorized by the State Board of Medical Examiners, to assess the extent of body malfunction provided, however, that physical therapy shall not include radiology or electrosurgery. [N.J.S.A. 45:9-37.1(c)].
While we recognize that the Legislature, in adopting the 1983 Act, changed the definition of "physical therapist" (N.J.S.A. 45:9-37.13(b), "physical therapy" (N.J.S.A. 45:9-37.13(d), and "practice of physical therapy" (N.J.S.A. 45:9-37.14), we discern no clearly stated legislative purpose to permit examination and instruction without physician direction. Nor do we perceive a legislative design to permit modification of treatment modalities previously prescribed by a physician without his or her specific direction. Such a radical recasting of the physical therapist's role should not be inferred absent explicit legislative language authorizing this major change. See DeFazio v. Haven Savings and Loan Ass'n., 22 N.J. 511, 519 (1956); Carlo v. The Okonite Callender Cable Co., 3 N.J. 253, 265 (1949); Marley v. Palmyra Bor., 193 N.J. Super. 271, 292 (Law Div. 1983). Rather, we glean from our review of the predecessor statutes a clearly expressed intent, reiterated over the course of many years in numerous amendments, to require physician direction of physical *137 therapy services. While we do not doubt that the practice of physical therapy requires the exercise of some independent discretion, see, e.g., Matter of Promulgation of N.J.A.C. 13:35-6.14, 205 N.J. Super. 492, 497 (App.Div. 1985), we find nothing to suggest that the Legislature contemplated such a radical dissipation of the physician's role, as urged by the Board.
The evidence abounds the other way. In the Statement of the Senate Labor Industry and Professions Committee, which accompanied the bill, it was said that "[a] physical therapist would be permitted to provide physical therapy treatment to patients upon the direction of a physician, dentist or otherwise qualified health professional. Nothing in the bill authorizes a physical therapist ... to practice medicine, surgery, chiropractic or dentistry." Significantly, in adopting the 1983 Act, the Legislature did not modify or alter N.J.S.A. 45:9-21(k), which excepts from the prohibitory provisions barring unlicensed individuals from practicing medicine, a "physical therapist ... while operating under the specific direction of a regularly licensed physician or surgeon." In a similar vein, the Statement of the Assembly Higher Education and Regulated Professions Committee is devoid of anything to suggest a legislative intent to change the requirement, which has existed for well over three quarters of a century, mandating physician direction. According to the Committee, the bill's major provisions:
1. Define the practice of physical therapy (section 3);
2. Establish a nine member State Board of Physical Therapy in the Department of Law and Public Safety to regulate the practice of physical therapy and to examine and license physical therapists and physical therapist assistants (section 5);
3. Prohibit fee splitting (section 11);
4. Establish criteria for licensure as a physical therapist or physical therapist assistant for graduates of both United States and foreign schools of physical therapy (sections 12 and 13);
5. Provide for licensure reciprocity with states with education and experience requirements substantially similar to New Jersey (section 18);

*138 6. Allow the temporary licensure of an applicant pending examination or of an out-of-state physical therapist temporarily on assignment in this State (section 11); and
7. Allow the licensure without examination of currently registered physical therapists and physical therapist assistants (section 22).
Our thorough review of the Act convinces us that the principal objective of the Legislature was to strengthen licensure requirements. In our view, the Legislature never intended to authorize physical therapy examination and instruction without physician direction, or modification of treatment modalities previously prescribed by a physician. We thus hold that the Board exceeded its delegated powers.
Accordingly, the action of the Board in promulgating N.J.A.C. 13:39A-2.2(b) is reversed and the regulation is declared void.