238 N.J. Super. 516 (1989)
570 A.2d 435
IN THE MATTER OF THE FRESHWATER WETLANDS PROTECTION ACT RULES, N.J.A.C. 7:7A-1.1 ET SEQ.
Superior Court of New Jersey, Appellate Division.
Argued June 1, 1989.
Decided September 7, 1989.
*517 Before Judges KING, ASHBEY and SKILLMAN.
Michael J. Gross argued the cause for appellant New Jersey Builders Association (Giordano, Halleran & Ciesla, attorneys, Andrew B. Robin and Margaret B. Carmeli, on the brief).
Carol A. Blasi, Deputy Attorney General, argued the cause for respondent, State of New Jersey, Department of Environmental Protection (Peter N. Perretti, Jr., Attorney General of New Jersey, attorney).
The opinion of the court was delivered by KING, P.J.A.D.
This is an appeal by the New Jersey Builders Association (NJBA) challenging certain regulations promulgated by the New Jersey Department of Environmental Protection (DEP) which implement the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 to -30 (the Act or Wetlands Act). We invalidate N.J.A.C. 7:7A-2.7(d)(1) and (2) because it improperly limits the *518 statutory exemption extended to certain municipal approvals by N.J.S.A. 13:9B-4d. We reject the challenges to the other regulations.
The Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 to -30, was signed into law on July 1, 1987; five of its provisions became effective immediately, with the remainder of the provisions becoming effective July 1, 1988, except that three sections (dealing with transition area requirements) could not be implemented until July 1, 1989. At the same time the Wetlands Act was codified, the Legislature amended two sections of the Water Pollution Control Act, N.J.S.A. 58:10A-1 to -20, specifically N.J.S.A. 58:10A-5 and N.J.S.A. 58:10A-6, to make the two Acts consistent.
This is a background of the Act and its design. N.J.S.A. 13:9B-2 sets out the Legislature's findings and declarations describing why it enacted the Freshwater Wetlands Protection Act. Freshwater wetlands are areas inundated or saturated by surface water or ground water at a frequency and duration sufficient to support a prevalence of vegetation typically adapted for life in saturated soil conditions (hydrophytic vegetation). N.J.S.A. 13:9B-3. The Act divided freshwater wetlands into three categories. In the first, and most highly protected category, are freshwater wetlands of exceptional resource value. These wetlands are defined by their discharge points and by whether they are present habitats for threatened or endangered species or whether they have been established as suitable for breeding, resting or feeding by threatened or endangered species during the normal period those species would use the habitat. N.J.S.A. 13:9B-7a(2). There are two lesser protected categories: freshwater wetlands of ordinary value, which are defined as those wetlands which do not exhibit the characteristics of freshwater wetlands of exceptional resource value and which are certain isolated wetlands, man-made drainage ditches, swales or detention facilities, N.J.S.A. 13:9B-7b; and freshwater wetlands of intermediate resource value, which are all *519 freshwater wetlands not included within the other two categories. N.J.S.A. 13:9B-7c.
Because the Legislature found that these freshwater wetlands protect and preserve drinking water supplies, provide a natural means of flood and storm drainage protection, serve as a transition zone between dry land and water courses retarding soil erosion, provide essential breeding, spawning, nesting and wintering habitats for a major portion of the State's fish and wildlife and maintain a critical base flow to surface waters through their gradual release of stored flood waters and ground water, particularly during a drought, it concluded that these inland waterways and freshwater wetlands need vigorous protection. N.J.S.A. 13:9B-2. The Legislature asserted that
... in order to advance the public interest in a just manner the rights of persons who own or possess real property affected by this Act must be fairly recognized and balanced with environmental interests;... the public benefits arising from the natural functions of freshwater wetlands, and the public harm from freshwater wetland losses, are distinct from and may exceed the private value of wetland areas. [N.J.S.A. 13:9B-2.]
The Legislature then determined that, in this State, pressures for commercial and residential development define the pace and pattern of land use. Therefore, it was in the public interest to establish a program for systematic review of activities in and around freshwater wetland areas "designed to provide predictability in the protection of freshwater wetlands." Ibid. The Legislature declared
... that it shall be the policy of this State to preserve the purity and integrity of freshwater wetlands from random, unnecessary or undesirable alteration or disturbance; and that to achieve these goals it is important that the State expeditiously assume the freshwater wetlands permit jurisdiction currently exercised by the United States Army Corps of Engineers pursuant to the Federal Act and implementing regulations. [N.J.S.A. 13:9B-2.]
One of the main purposes of this legislation was to provide the State with the statutory authority necessary to assume implementation of the federal wetlands protection program, which previously had been administered by the U.S. Army Corps of Engineers pursuant to § 404 of the Federal Clean Water Act of 1977, 33 U.S.C.A. § 1344. Under the federal *520 § 404 program, the Army Corps of Engineers was entitled to regulate only the "filling in" of freshwater wetlands (40 C.F.R. § 232.1, § 232.2(b), (e), (f)).
Because of the limited regulation of freshwater wetland areas by the federal government and virtually nonexistent regulation of those same areas by the State, the Legislature decided to enact a statutory scheme which would not only regulate any activity which could occur in freshwater wetlands, but which would also assume the regulatory function over disposal of dredged or fill material heretofore provided by the Army Corps of Engineers under the § 404 program (N.J.S.A. 13:9B-2). The Clean Water Act, 33 U.S.C.A. § 1344, also permits a state to assume the regulatory program for the discharge of dredged or fill material into state-controlled waters. 33 U.S.C.A. § 1344(g), (h). However, in order to be approved for assumption, the state program must be as stringent as the federal program and must comply with all the requirements of the federal regulations. 33 U.S.C.A. 1344(g), (h); 40 C.F.R. § 232-233. 40 C.F.R. § 233.1(c) specifically provides that "nothing in this part precludes a state from adopting or enforcing requirements which are more stringent or from operating a program with greater scope, than required under this part." Furthermore, the State's program regulating discharges of dredged or fill material into state-regulated waters must be comprehensive; "partial state programs are not approvable under § 404." 40 C.F.R. § 233.1(b).
Thus, to assume the federal § 404 program, as the Legislature expressly directed, the DEP had to have the power to regulate all discharges of dredged or fill material into state-regulated waters. State-regulated waters are all waters within a state's boundary over which the state has jurisdiction, "other than those waters which are presently used, or are susceptible to use in their natural condition or by reasonable improvement as a means to transport interstate or foreign commerce shoreward to their ordinary high water mark, including all waters which are subject to the ebb and flow of the tide shoreward to *521 their mean high water mark, or mean higher high water mark on the west coast, including wetlands adjacent thereto...." These waters are federally regulated. 33 U.S.C.A. § 1344(g)(1); Accord, 40 C.F.R. § 232.2(p). Because the State intended to regulate the discharge of the dredged and fill materials into State waters, the Legislature had to amend the Water Pollution Control Act, N.J.S.A. 58:10A-1 to -20, to give the DEP power to exercise this necessary control. To that end, N.J.S.A. 58:10A-5 and 58:10A-6 were amended to provide that authority.
Because of the federal requirement that the state assumption program be total, the DEP also had to amend N.J.A.C. 7:14A-3.1, which had listed certain types of discharges which were exempt from the permit requirements of the New Jersey Pollutant Discharge Elimination System (NJPDES), which implemented the Water Pollution Control Act, N.J.S.A. 58:10A-1 to -60. Prior to the amendment, the discharge of dredged or fill material into freshwater wetlands and state open waters was exempt from the NJPDES permit requirements. In order to eliminate this conflicting provision from the regulations and to promote consistency between the Water Pollution Control Act and the Wetlands Act, N.J.A.C. 7:14A-3.1 was amended to exempt only discharges of dredged or fill material into federal waters; the amendment provided that such discharge would be prohibited, however, without an NJPDES permit, which "shall be a freshwater wetlands permit or an Open Water Fill permit...." N.J.A.C. 7:14A-3.1(b)2i.
The regulations governing freshwater wetlands also had to be redrafted to cover the permitting process for the discharge of dredged or fill materials. Thus, N.J.A.C. 7:7A-1.4 defined State open waters in a manner consistent with the federal statutory and regulatory definition: State open waters were exempted from the freshwater wetlands permit requirement but were made subject to an open water fill permit requirement; standards for obtaining an open water fill permit were to *522 be consistent with the standards filed by the Army Corps of Engineers under § 404 of the federal act.
N.J.S.A. 13:9B-27(a) specifically directs the DEP and the Attorney General to take all appropriate action to secure the assumption of permit jurisdiction exercised by the U.S. Corps of Army Engineers pursuant to the federal act. It also requires that the application to the United States Environmental Protection Agency for this assumption be made within one year of the enactment. The Department must use practices and procedures as close as possible to those used by the Army Corps of Engineers in issuing permits under the federal act. N.J.S.A. 13:9B-27(b).
Several other features of the Freshwater Wetlands Protection Act deserve mention. N.J.S.A. 13:9B-4 sets out those activities exempt from permit and transition area requirements. Pertinent to this appeal is subsection (d), which exempts (1) projects for which preliminary site plan or subdivision applications have received preliminary approvals from local authorities pursuant to the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -112, prior to the effective date of the Act, July 1, 1988; (2) projects for which preliminary site plan or subdivision applications have been submitted prior to June 8, 1987; (3) projects for which permit applications have been approved by the U.S. Army Corps of Engineers prior to the effective date of the Act; and (4) projects not subject to the jurisdiction of the U.S. Army Corps of Engineers, and for which preliminary site or subdivision applications had been approved prior to the effective date of the Act. N.J.S.A. 13:9B-4d. Transition areas are those areas of land adjacent to freshwater wetlands which minimize adverse impacts on the wetlands or which serve as an integral component of the wetlands ecosystem. N.J.S.A. 13:9B-3. They are more specifically defined in terms of distance and type in N.J.S.A. 13:9B-16. The type of activities limited in transition areas, as well as the circumstances under which a waiver of the requirements may be obtained, are described in N.J.S.A. 13:9B-17 and N.J.S.A. 13:9B-18.
*523 In N.J.S.A. 13:9B-5a, the DEP was directed to consolidate all other regulatory programs affecting activities in freshwater wetlands with permit processes. Anyone desiring to engage in a regulated activity in a freshwater wetland, or in an activity which requires a transition area waiver can, prior to applying for the necessary permit or waiver, request from the DEP a letter of interpretation to establish that the site of the proposed activity is located in a freshwater wetland or transition area. N.J.S.A. 13:9B-8. The procedures for obtaining a letter of interpretation and for obtaining a permit to engage in a regulated activity are set out in N.J.S.A. 13:9B-8 and 13:9B-9 respectively. N.J.S.A. 13:9B-10 establishes a rebuttable presumption that there is a practicable alternative to any nonwater-dependent regulated activity that does not involve a freshwater wetland and that such an alternative to any regulated activity would have less of an impact on the aquatic ecosystem. N.J.S.A. 13:9B-10a. The statute sets out the ways in which the presumption can be rebutted, but it places a higher burden upon an individual seeking to rebut the presumption with respect to wetlands of exceptional resource value. In that case an applicant has to demonstrate that there is a compelling public need for the proposed activity greater than the need to protect the freshwater wetland. N.J.S.A. 13:9B-10c. N.J.S.A. 13:9B-11 sets out the factors to be considered in determining if the activity is indeed in the public interest and N.J.S.A. 13:9B-13 delineates conditions which may be required before a freshwater wetlands permit will be issued.
Pursuant to N.J.S.A. 13:9B-25, the DEP proposed detailed regulations implementing the Wetlands Act which were published in the New Jersey Register on December 21, 1987. Public hearings were held on these proposed regulations on January 12, 13 and 14, 1988. Comments were received by DEP until February 20, 1988. In all, the DEP received and responded to 479 comments; those responses were published at 20 N.J.R. 1235-1262 on June 6, 1988. In response to the comments, certain changes were made in the proposed regulations. The *524 regulations, as changed, were adopted on May 16, 1988 by the Commissioner and published at 20 N.J.R. 1263-1285 on June 6, 1988. They were codified at N.J.A.C. 7:7A-1 to -17.9.
Subsequently, the DEP proposed regulations concerning fees to be charged for various agency activities under the Act. 20 N.J.R. 576. These regulations were proposed on March 21, 1988; a public hearing was held on April 7, 1988 and written comments were accepted until May 20, 1988. The regulations were adopted on June 10, 1988 and published at 20 N.J.R. 1553-1558 on July 5, 1988. The regulations were codified at N.J.A.C. 7:7A-16 and N.J.A.C. 7:7A-17. Statewide general permit regulations were proposed on June 20, 1988 (20 N.J.R. 1327), as were regulations amending New Jersey Pollutant Discharge Elimination System regulations, 20 N.J.R. 1328-1329. These latter proposed regulations were adopted on December 19, 1988 and codified at N.J.A.C. 7:14A-3.1 to -3.17.
On August 23, 1988 NJBA filed a notice of appeal from the adoption of certain regulations codified at N.J.A.C. 7:7A-1.4 (definitions of open water fill permit and swale); N.J.A.C. 7:7A-2.1(a) and all other regulations with regard to open water fill permits; N.J.A.C. 7:7A-2.5(c)(1); 7:7A-2.6; 7:7A-2.7(e) and (f); 7:7A-4.1; 7:7A-8.2(b)(5); (c)(3) and (i); 7:7A-8.3 and 7:7A-15.2. The notice of appeal was subsequently amended on August 25, 1988 to include an appeal from the adoption of N.J.A.C. 7:7A-2.7(d) and (g) (activities exempted from permit requirements). On November 4, 1988 the notice of appeal was again amended to include reference to N.J.A.C. 7:7A-2.7(h) and (i).
These are the ten issues as stated by appellant NJBA in challenge to the regulations:
I. WHETHER THE DEP'S FAILURE TO INCLUDE A REGULATION PROVIDING FOR NOTICE PRIOR TO THE INSPECTION OF PROPERTY VIOLATES THE NEW JERSEY CONSTITUTION.
II. WHETHER THE DEFINITIONS OF "ISOLATED WETLAND" AND "SWALE" ARE INCONSISTENT WITH THE ACT.

*525 III. WHETHER THE REGULATION OF "OPEN WATERS" IS BEYOND THE SCOPE OF THE ACT AND THEREFORE ULTRA VIRES.
IV. WHETHER N.J.A.C. 7:7A-2.7(d)(1) AND (2) IMPROPERLY LIMIT THE STATUTORY EXEMPTION CONCERNING PRELIMINARY MUNICIPAL APPROVALS.
V. WHETHER N.J.A.C. 7:7A-2.7(d)(1) AND (2) IMPROPERLY LIMIT EXEMPTIONS BASED UPON PRIOR MUNICIPAL APPROVALS WHEN A "SIGNIFICANT CHANGE" IN THE PLANS HAS OCCURRED.
VI. WHETHER THE REGULATIONS IMPROPERLY FAIL TO EXEMPT THE TRANSITION AREA REQUIREMENTS FOR PROJECTS APPROVED BY THE U.S. ARMY CORPS OF ENGINEERS PRIOR TO JULY 1, 1988.
VII. WHETHER THE REGULATIONS IMPROPERLY PROVIDE THAT STATUTORY WAIVERS SHALL BE VOID IF A PERMIT IS REQUIRED WHEN THE STATE ASSUMES THE FEDERAL WETLANDS PROGRAM.
VIII. WHETHER THE DEP'S INCLUSION OF SURVEYING AS AN ACTIVITY FOR WHICH A GENERAL PERMIT IS REQUIRED IS ARBITRARY, CAPRICIOUS AND UNREASONABLE.
IX. WHETHER THE NOTIFICATION REQUIREMENTS IN THE REGULATIONS IMPOSE AN UNREASONABLE BURDEN UPON APPLICANTS FOR LETTERS OF INTERPRETATION.
X. WHETHER THE FEES IMPOSED BY N.J.A.C. 7:7A-16.2 FOR OBTAINING LETTERS OF INTERPRETATION ARE UNREASONABLE, ARBITRARY AND CAPRICIOUS AND REQUIRE MODIFICATION.
With the exception of Point IV, on the time limit established by N.J.A.C. 7:7A-2.7(d)(1) and (2), which regulation we find was beyond the DEP's authority under the enabling Wetlands Act, we conclude that the NJBA's contentions are clearly without merit and affirm, R. 2:11-3(e)(1)(D).
Any consideration of the validity of an administrative regulation necessarily begins with the well-settled principle that administrative regulations are accorded a presumption of reasonableness and a rebuttable presumption of validity. A.A. Mastrangelo, Inc. v. Environmental Protect. Dep't., 90 N.J. 666, 683, 449 A.2d 516 (1982); New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561, 384 A.2d 795 (1978). Our Supreme Court has repeatedly stated that "an ultra vires finding is disfavored." Long, 75 N.J. at 561, 384 A.2d 795. Accord In re Regulation F-22, Office of Milk Industry, New Jersey, 32 N.J. 258, 261-262, 160 A.2d 627 (1960); Flanagan v. Civil Service Department, 29 N.J. 1, 12, 148 A.2d 14 (1959). *526 The burden is upon the party attacking the regulation to prove that it is arbitrary, capricious, unduly onerous or otherwise unreasonable. Long, 75 N.J. at 561, 384 A.2d 795.
Equally well-settled, however, is the principle "that the rules and regulations and administrative action cannot subvert or enlarge upon the statutory policy or the rules and regulations therein set down. Administrative implementation cannot deviate from the principle and policy of the statute." Abelson's, Inc. v. N.J. State Board of Optometrists, 5 N.J. 412, 424, 75 A.2d 867 (1950). Administrative regulations cannot alter the terms of a legislative enactment nor can they frustrate the policy embodied in the statute. N.J. Chamb. Commerce v. N.J. Elec. Law Enforc. Comm., 82 N.J. 57, 82, 411 A.2d 168 (1980). "When the rule of an administrative agency contravenes the statute which created it, the rule lacks legal efficacy." Kamienski v. Bd. of Mortuary Science, 80 N.J. Super. 366, 370, 194 A.2d 743 (App.Div. 1963).
Nevertheless, while an administrative regulation "must be within the fair contemplation of the delegation of the enabling statute," Southern Jersey Airways v. Nat. Bk. of Secaucus, 108 N.J. Super. 369, 383, 261 A.2d 399 (App.Div. 1970), the legislative grant of authority "is to be liberally construed to enable the agency to accomplish its statutory responsibilities." Long, 75 N.J. at 562, 384 A.2d 795. Our courts "readily imply such incidental powers as are [reasonably] necessary to effectuate fully the legislative intent." Ibid. Thus, regulations issued by an administrative agency are "cloaked with a presumption of legitimacy and should be sustained unless clearly ultra vires ...." Medical Soc. v. N.J. Dept. of Law, 229 N.J. Super. 128, 134, 550 A.2d 1272 (App.Div. 1988).
Consequently, in this case, the inquiry must focus upon whether the administrative regulation "falls within the boundaries of the legislative delegation." Ibid. Administrative action "is of necessity restrained by the declared policy and spirit of the statute and the criteria and standards therein laid down, *527 for a grant not thus confined would constitute a delegation of essential legislative power in contravention of constitutional limitations. The distinction is between the making and the execution of the law." Abelson's, Inc. v. N.J. State Board of Optometrists, 5 N.J. at 423, 75 A.2d 867; see D.S. v. East Brunswick Tp. Bd. of Ed., 188 N.J. Super. 592, 598, 458 A.2d 129 (App.Div.), certif. den. 94 N.J. 529, 468 A.2d 184 (1983); Hillman/Kohan v. N.J. Board of Optometrists, 169 N.J. Super. 259, 404 A.2d 1172 (App.Div. 1979).
Finally, there is the "fundamental maxim that the opinion as to the construction of a regulatory statute of the expert administrative agency charged with the enforcement of that statute is entitled to great weight." Long, 75 N.J. at 575, 384 A.2d 795. Such judicial deference to the administrative interpretation of a statute is even more appropriate "when the case involves the construction of a new statute by its implementing agency." Ibid., quoting Natural Resources Defense Counsel, Inc. v. Train, 166 U.S.App.D.C. 312, 326, 510 F.2d 692, 706 (D.C. Cir.1975).
The appellant Builders Association contends that N.J.A.C. 7:7A-2.7(d)(1) and (2)[1] are ultra vires because they impose *528 a five-year limitation upon the exemptions statutorily granted to projects for which preliminary site plan or subdivision applications have received preliminary approval pursuant to the Municipal Land Use Law (N.J.S.A. 40:55D-1 et seq.) prior to the effective date of the Act, and those projects for which preliminary site plan or subdivision applications have been submitted to local authorities prior to June 8, 1987. Appellant contends that no such five-year limitation is to be found anywhere in the Act and that the DEP is without authorization to create and impose it. The DEP responds that authorization is to be found in the Legislature's delegation of authority to the DEP to create a regulatory scheme which protects the purity and integrity of freshwater wetlands from random, unnecessary and undesirable disturbance while recognizing that the public benefits which come from the protection of these areas may exceed the private value of the land. N.J.S.A. 13:9B-2.
N.J.S.A. 13:9B-4d[2] is indeed silent on the duration of these exemptions which, we note, are total. Those projects which receive preliminary MLUL approval and for which site plan or *529 subdivision applications have been submitted prior to June 8, 1987 are totally free from all freshwater wetlands permit and transition area requirements under the statute's express terms.
We agree that it may make sense to conservationists to place a limitation upon the duration of this total exemption to prevent developers from sitting on their exemptions and years later developing areas that the Legislature may have intended to protect from this development. The DEP received numerous objections to this five-year limitation during the comment period prior to adoption. Comment 162 indicates that 17 commentators complained about the five-year rule, urging its inconsistency with the MLUL:
Seventeen commenters stated that the proposed rule unduly limits the exemption for projects with preliminary approvals from municipalities under the Municipal Land Use Law (MLUL) to those projects initiated within five years of July 1, 1987. This is inconsistent with the passage by the Legislature of an amendment to the MLUL to extend the life of preliminary approvals to up to 20 years in certain situations. Also, this five year limit on the exemption does not add to freshwater wetlands protection because the rule already includes another provision protecting against changes involving more freshwater wetlands in projects which are exempted.
The DEP responded to the commentators this way:
The limitation is intended to balance protection of investments and protection of wetlands. The Act's exemption was designed to protect persons who had invested substantial amounts of time and resources in project planning prior to the Act's passage. The proposed limitation does not reduce protection for those persons. The provision requires only that the project be started within five years to prevent the exemption from lapsing. If a project is not far enough along in the planning process to be ready to start work within five years, it probably has not had the substantial investment in planning that the Act was designed to protect.
There are also equitable reasons for the five-year limitation on the exemption. If unlimited, the exemption would produce an unjust advantage for some persons. A person could obtain preliminary local approvals for projects they had no intention of building for years to come. Then, 20 years from now when all other builders are subject to strict freshwater wetlands and transition area requirements, that person could build nonconforming, environmentally destructive projects on properties immediately adjacent to those subject to strict regulation. In addition, these projects might take many forms unknown at present, since their only restriction would be to follow a general, preliminary site plan or subdivision map. In summary, the department believes a limit on the exemption is appropriate in the adoption at N.J.A.C. 7:7A-2.7(d).
*530 The competing substantive policy positions on the proposal for a specific five-year time limit on exemptions are indeed debatable. However, we find that the Act deals very specifically with exemptions and directly incorporates the application and approval concepts of the Municipal Land Use Law. We conclude that if the Legislature wanted to put a five-year or 1993 termination deadline on these "grandfathered" exemptions, it would have specifically done so, rather than leave such a decision to the regulator's initiative. This is not the kind of incidental regulatory power we must "readily imply" as necessary to effectuate the legislative intent. Long, 75 N.J. at 562, 384 A.2d 795.
The application and approval stage may, with extensions, encompass up to ten years under the MLUL under certain circumstances, see N.J.S.A. 40:55D-49, -52, and even up to 20 years for certain large scale projects, see N.J.S.A. 40:55D-45.1(b), (c). The Legislature is presumed to be aware of its prior enactments, Mahwah Tp. v. Bergen County Bd. of Taxation, 98 N.J. 268, 279, 486 A.2d 818 (1985), particularly where it specifically incorporates by reference prior enactments in subsequent legislation. Singer, 2A Sutherland, Statutory Construction (Sands 4th ed. 1984) § 51.02 at 453. When cognate laws are passed, we presume that they were intended to be part of a consistent whole unless expressly or impliedly incompatible. Jacobs v. N.J. State Highway Authority, 54 N.J. 393, 401, 255 A.2d 266 (1969). We conclude that if the Legislature had wanted to put a time limit on exemptions more stringent than the time limits permitted by the MLUL, it would have specifically said so.
As above noted, we have concluded that the other challenges to the Wetlands Act regulations are clearly without merit. R. 2:11-3(e)(1)(D). These regulations plainly fall within the regulatory power of the agency discussed at 525 to 526, 570 A.2d at 440-441 ante.
We reverse as to N.J.A.C. 7:7A-2.7(d)(1) and (2). We affirm as to the remaining challenges.
NOTES
[1] N.J.A.C. 7:7A-2.7(d)(1) and (2) state:

(d) Subject to the limitations of this section, the following are exempt from the requirement of a freshwater wetlands permit or open water fill permit until the State assumes the Federal 404 program. These activities may need Federal 404 permits:
1. Projects for which preliminary site plan or subdivision applications have received formal preliminary approvals from local authorities pursuant to the "Municipal Land Use Law," N.J.S.A. 40:55D-1 et seq., prior to July 1, 1988 provided those approvals remain valid under the Municipal Land Use Law. This excludes approvals which were given prior to the effective date of the Municipal Land Use Law. Projects governed by this paragraph which are not initiated within five years of enactment of the Act shall no longer be exempt from the requirement of a freshwater wetlands permit or open water fill permit;
2. Projects for which preliminary site plan or subdivision applications as defined in N.J.S.A. 40:55D-1 et seq. have been submitted to the local authorities prior to June 8, 1987. Persons with projects governed by this paragraph which are not initiated within five years of July 1, 1987 shall no longer be exempt from the requirements of a freshwater wetlands permit or open water fill permit;
[2] N.J.S.A. 13:9B-4d states:

The following are exempt from the requirement of a freshwater wetlands permit and transition area requirements unless the United States Environmental Protection Agency's regulations providing for the delegation to the state of the federal wetlands program conducted pursuant to the Federal Act require a permit for any of these activities, in which case the department shall require a permit for those activities so identified by that agency:
....
d. Projects for which (1) preliminary site plan or subdivision applications have received preliminary approvals from the local authorities pursuant to the "Municipal Land Use Law," P.L. 1975, c. 291 (C. 40:55D-1 et seq.) prior to the effective date of this act [July 1, 1988], (2) preliminary site plan or subdivision applications have been submitted prior to June 8, 1987....