*630 A.2d 383*

IN THE MATTER OF THE APPEAL OF ADOPTION OF N.J.A.C. 5:25A–1.1, ET SEQ., BY THE NEW JERSEY DEPARTMENT OF COMMUNITY AFFAIRS, DIVISION OF HOUSING AND DEVELOPMENT.

Superior Court of New Jersey
Appellate Division

Argued June 3, 1993—Decided July 30, 1993.

Before Judges KING, LANDAU and THOMAS.

*Peter A. Buchsbaum* argued the cause on behalf of appellants (*Greenbaum, Rowe, Smith, Ravin & Davis*, attorneys; *Mr. Buchsbaum* and *Dennis A. Estis*, of counsel; *Anne S. Peterson* and *Shirleen A. Roberts*, on the brief).

*John J. Chernoski*, Deputy Attorney General, argued the cause on behalf of the State of New Jersey, Department of Community Affairs (*Robert J. Del Tufo*, Attorney General, attorney; *Joseph L. Yannotti*, Assistant Attorney General, of counsel; *Martine Cohen–Kutzenco*, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

THOMAS, J.A.D.

Appellants are various builders, developers and homeowners. They appeal the adoption of regulations (*N.J.A.C.* 5:25A–1.1 to – 2.10) by respondent Department of Community Affairs (DCA), pursuant to the New Jersey Home Warranty Act, *N.J.S.A.* 46:3B– 1 to –20, which, together, provide the mechanism for establishing damage claims for defective fire retardant plywood (FRT ply-

wood). Specifically, appellants take exception to *N.J.A.C.* 5:25A–1.3.

To place the present litigation in perspective, a brief historical overview is necessary. In order to comply with the New Jersey Uniform Construction Code Act, *N.J.S.A.* 52:27D–119 to –141, and regulations adopted pursuant to the Act, *N.J.A.C.* 5:23–1 to –12.8, effective January 1, 1977, builders began in 1981 to use FRT plywood in the construction of roofs of multifamily dwellings. FRT plywood was treated with certain chemicals whose intended purpose was to react in such a manner as to retard the spread of fire. However, by 1987, it became apparent that FRT plywood often developed severe decomposition to the point of risking collapse of the roof structure it supported. Safety concerns sometimes dictated the replacement of entire roof systems. To recover for this costly process, litigation was commenced against those manufacturers and suppliers responsible for introducing this product. This litigation has been settled in part but not completely at this time.

The regulations in question were adopted by the Commissioner of the DCA pursuant to the New Home Warranty Act, *N.J.S.A.* 46:3B–1 to –20 as amended by *L.* 1991, *c.* 202 *N.J.S.A.* 46:3B–13 to –20. Under the New Home Warranty Act, the builder of a new home must provide warranty coverage for that new home by participating in a State plan administered by DCA, or in an approved alternative private plan. *N.J.S.A.* 46:3B–5. Pursuant to the Act, warranty against major construction defects is provided to new home owners for ten years as set forth in *N.J.S.A.* 46:3B–3b(3).

Because of extensive problems stemming from the failure of FRT plywood roof sheathing and the resistance to claims by warranty guarantors under the Act (which were only resolved after prolonged negotiation or litigation), the Legislature enacted *N.J.S.A.* 46:3B–13 to –20. In doing so, the Legislature's intent was "to establish a funding mechanism, based upon the State's New Home Warranty program . . . to make immediate funding

available to homeowners faced with emergent needs for immediate remediation of the[ir] major construction defect[s], as well as to builders and warranty guarantors who honor the claims of such owners." *N.J.S.A.* 46:3B–13d.

The 1991 legislation authorized the DCA Commissioner to adopt and promulgate "[s]tandards, procedures and technical criteria for making an examination and determination ..." of whether the claimed damage is ascribable to FRT plywood, and whether it resulted or materially contributed to the creation of a major construction defect. *N.J.S.A.* 46:3B–15b(1). In carrying out this provision, the legislation authorized the Commissioner to develop "a method of nondestructive testing or other procedure capable of ascertaining inevitable premature failure of an FRT plywood installation." *N.J.S.A.* 46:3B–15b(2). These regulations, *N.J.A.C.* 5:25A–1.1 to –2.10, were adopted by the Commissioner on March 27, 1992, and became effective on April 20, 1992. 24 *N.J.R.* 1480. This appeal is taken from the adoption of these regulations.

Appellants contend that the warranty coverage standards set forth in the regulations impermissibly limit recovery under the Act. They assert that the regulations require *actual failure* within the ten-year warranty period as a prerequisite to recovery, while the Act only requires the *detection* of inevitable premature failure within the warranty period. Phrased differently, appellants contend the effect of the regulations is to prevent recovery for roofs which will inevitably fail prematurely but which have not yet actually failed within the ten-year warranty term.

Respondent maintains that the regulations should be upheld because they are entirely consistent with the statutory scheme. It argues that what appellants actually seek is an extension of the warranty period beyond the stated ten-year period. We agree with appellants that the regulation improperly limits recovery and reverse and remand.

Administrative regulations are accorded a presumption of reasonableness. *In re Adoption of N.J.A.C. 7:26B,* 128 *N.J.*

442, 449, 608 *A.*2d 288 (1992). This presumed validity is consistent with the judiciary's traditional deference to an agency's interpretation of novel or new legislation. *Id.* at 451–52, 608 *A.*2d 288. Moreover, the legislative grant of authority is liberally construed to enable the agency to accomplish its statutory responsibilities, and its regulations should be sustained unless clearly *ultra vires. Matter of Freshwater Wetlands Rules,* 238 *N.J.Super.* 516, 526, 570 *A.*2d 435 (App.Div.1989).

◼ Nonetheless, administrative action cannot subvert or enlarge upon the principle and policy of the applicable statute. *Abelson's, Inc. v. New Jersey State Bd. of Optometrists,* 5 *N.J.* 412, 424, 75 *A.*2d 867 (1950). The rule or regulation must carry out the will of the legislature by falling within the express or implied grant of power to the agency in the enabling legislation. *Bernards Tp. v. Dep't of Com. Affairs,* 233 *N.J.Super.* 1, 8, 558 *A.*2d 1 (App.Div.), *certif. denied,* 118 *N.J.* 194, 570 *A.*2d 959 (1989); *In re Petition for Substantive Certification filed by the Tp. of Warren,* 132 *N.J.* 1, 622 *A.*2d 1257 (1993). When the rule or regulation of an administrative agency contravenes the statute which created it, the rule lacks legal force. *See Matter of Freshwater Wetlands Rules, supra,* 238 *N.J.Super.* at 526–30, 570 *A.*2d 435 (regulation that imposed five year limitation on statutory exemption from permit and transition area requirements under the Freshwater Wetlands Protection Act was *ultra vires* because it improperly limited the statutory exemption which was silent on the duration of the exemptions); *Bernards Tp. v. Dep't of Com. Affairs, supra,* 233 *N.J.Super.* at 12–14, 558 *A.*2d 1 (regulation adopted by New Jersey Council on Affordable Housing (COAH) providing that credits toward determining a municipality's fair share of low and moderate income housing are only available if a dwelling unit's occupancy is restricted to low or moderate income households was invalid because it altered the terms of the Fair Housing Act which contained no language restricting its application to units legally limited to residents with low household incomes).

 The New Home Warranty and Builders' Registration Act (Act) extends a warranty to homeowners for "major construction defect[s]" which occur within ten years of occupation or settlement. *N.J.S.A.* 46:3B–2h; *N.J.S.A.* 46:3B–3b(3). These defects are defined as:

> any actual damage to the load bearing portion of the home including damage due to subsidence, expansion or lateral movement of the soil (excluding movement caused by flood or earthquake) which affects its load bearing function and which vitally affects or is imminently likely to vitally affect use of the home for residential purposes.
>
> [*N.J.S.A.* 46:3B–2g.]

However, this definition of "major construction defect" is modified by *N.J.S.A.* 46:3B–15b(2) in which another term "inevitable premature failure" is introduced and defined as:

> [A] condition in which deterioration of the FRT plywood, ascribable to a defect: in any of the materials or techniques used in its manufacture, in its fire retardant treatment, or due to other actions or omissions by responsible parties; and which is ascertainable within the ten-year warranty period and can be accurately predicted in accordance with the commissioner's testing procedure to make replacement of the material necessary within the ten-year warranty period. *Inevitable premature failure shall be deemed to constitute a major construction defect as of the time of its detection.*
>
> [*Ibid.* (emphasis added).]

Thus, in *N.J.S.A.* 46:3B–15, the Legislature created two types of compensable major construction defects: one, under (a)(1), where there is actual damage resulting in, or materially contributing to, the creation of a major construction defect; and two under (b), where appropriate testing of the FRT plywood reveals, within the ten-year warranty period, inevitable premature failure of the plywood requiring its replacement. In the former, a major construction defect has occurred within the warranty period; in the latter, the eventual necessity for premature replacement of the plywood is determined within the ten-year warranty period. Consequently, inevitable premature failure, while constituting a major construction defect, is a different kind of compensable major construction defect. It is a defect which has not yet affected the load-bearing functions of that portion of the home. Instead, it is a determination, made within the ten-year warranty period, that the

subject plywood is deteriorating and will prematurely fail, requiring its replacement materially before its ordinary life span under comparable conditions. Thus, to be recoverable under the statute, inevitable premature failure must be demonstrated within ten years; actual failure need not occur within ten years.

■ The regulation, however, defines a "major structural defect" eligible for relief in a more restrictive manner:

[A]ny actual damage to the load bearing portion of a building that affects its load-bearing function, or is imminently likely to vitally affect use of the building for residential purposes. "Major structural defect" also means and includes inevitable premature failure of FRT plywood *if it can be determined that a major structural defect will occur within the ten year coverage period of the claimant's new home warranty.* "Major structural defect" shall have the same meaning as "major construction defect," as used in the Act. (Emphasis supplied).

[*N.J.A.C.* 5:25A–1.3.]

The difficulty with the rule as promulgated is that it couples the discovery of inevitable premature failure with a requirement that a major structural or construction defect must occur within the warranty period. However, no such limitation was made by the Legislature. While inevitable premature failure constitutes a major construction defect in its application to plywood, the Act does not require that the major construction defect actually occur within the warranty period as long as inevitable premature failure has been established within the warranty period. Thus, we conclude that the DCA has restricted the statutory remedy unduly by its rules, contrary to the intent of the Legislature, by limiting claims for inevitable premature failure to plywood which actually fails within ten years.[1] We, therefore, invalidate that portion of *N.J.A.C.* 5:25A–1.3 which limits recovery for inevitable premature

---

[1] While pending legislation is of little persuasive effect, and is not proof of prior legislative intent, *Pickett v. Lloyds,* 252 *N.J.Super.* 477, 489, 600 *A.2d* 148 (App.Div.1991), *aff'd,* 131 *N.J.* 457, 621 *A.2d* 445 (1993); *Flexx Petro. Corp. v. Tax Div. Dir.,* 12 *N.J.Tax* 1, 18 (Tax Ct.1992), assembly Bill No. 1594 was introduced on June 22, 1992 with the intention of clarifying and strengthening the protection intended by chapter 202 for homeowners affected by FRT plywood. The bill redefines "major construction defect" to include structural damage due to defective FRT plywood *when either failure occurs or when, before such actual failure, premature deterioration of FRT plywood is determined to be*

failure, to failures which actually occur within the ten-year warranty period.

Appellants also contend that the regulations are invalid because DCA's method of evaluating deterioration provides no standards to guide its exercise of discretion in determining eligibility for recovery, and because the regulations do not provide testing procedures for inevitable premature failure as mandated by the Act. Respondent indicates in its brief that such procedures are in the process of development and notes that a section of the regulations, *N.J.A.C.* 5:25A–2.6, has been reserved to provide such standards. On remand, the respondent should accelerate its efforts to develop these procedures within six months.

Reversed and remanded for remedial action in accordance with this opinion.

---

*inevitable.* The bill also clarifies that the purpose of chapter 202 is to deal not simply with "unanticipated structural failure" but with "unanticipated deterioration or failure or the inevitable premature deterioration or failure." At the time of this opinion, the bill was still in the Housing Committee.