NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5490-11T3

W.B.,

    Appellant,

v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS,

    Respondent.

APPROVED FOR PUBLICATION

January 29, 2014

APPELLATE DIVISION

_____

Submitted October 1, 2013 — Decided January 29, 2014

Before Judges Espinosa, Koblitz and O'Connor.

On appeal from the New Jersey Department of Corrections.

W.B., appellant pro se.

John J. Hoffman, Acting Attorney General, attorney for respondent (Lisa A. Puglisi, Assistant Attorney General, of counsel; Justin L. Conforti, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

ESPINOSA, J.A.D.

In Williams v. N.J. Dep't of Corr., 423 N.J. Super. 176 (App. Div. 2011), we considered whether the Commissioner's broad authority to select the appropriate institution to house

inmates, N.J.S.A. 30:4-91.2, is limited by the Sex Offender Act (SOA), N.J.S.A. 2C:47-1 to -10. In deciding the appeal of an inmate who challenged his transfer from the general prison population to the Adult Diagnostic Treatment Center (ADTC), we concluded that the Commissioner of the Department of Corrections (DOC) lacked the discretion to transfer inmates to the ADTC who did not meet the sentencing parameters of the SOA. Williams, supra, 423 N.J. Super. at 186. W.B.'s appeal entails a different challenge to the authority of the Commissioner regarding assignment to the ADTC. Convicted as a sex offender in New Hampshire, his custody was transferred to New Jersey pursuant to the Interstate Corrections Compact (the Compact), N.J.S.A. 30:7C-1 to -12;[1] N.H. Rev. Stat. Ann. §§ 622-B:1 to -B:3 (2013), where he was assigned to the ADTC. Following Williams, however, he was reassigned to a wing for inmates who were not sentenced under the SOA and appealed that decision, arguing that the Compact required that he be treated as an ADTC-eligible offender. For the reasons that follow, we affirm.

---

[1] As codified, the Compact "empowers New Jersey to enter into contracts with other states 'for the confinement of inmates on behalf of a sending state in institutions situated within receiving states.'" Van Wickle v. N.J. Dep't of Corr., 370 N.J. Super. 40, 45 (App. Div. 2004) (quoting N.J.S.A. 30:7C-4(a)).

In April 2009, W.B. pled guilty to aggravated felonious sexual assault of a victim under the age of thirteen, and aggravated felonious sexual assault, N.H. Rev. Stat. Ann. § 632-A:2(II), for offenses committed against his granddaughter and his daughter. He was sentenced to an aggregate prison term of five to fifteen years and ordered to "participate meaningfully and complete any counseling, treatment and educational programs as directed by the correctional authority or Probation/Parole Officer." The New Hampshire Department of Corrections Initial Assessment Recommendations & Pre-release Plan Authorization Form referred W.B. to the Sex Offender Treatment Program and included the recommendation that W.B. needed "Sex Offender Evaluation & Treatment as Directed," "Substance Abuse Eval. & Treatment as Directed," and "Self-Help" as recommended by the court or the New Hampshire Department of Corrections.

Due to a potential conflict of interest involving the director of the New Hampshire Sex Offender Treatment Program, New Hampshire's Deputy Compact Administrator made a request to New Jersey to house W.B. pursuant to the Compact, noting that W.B. "needs Sex Offender Treatment and we are requesting that he do it while housed at your facility." The DOC approved the transfer.

W.B. was transferred to the custody of the DOC on January 13, 2010, and assigned to the ADTC. The ADTC is defined as "the correctional facility designated to house persons who have been sentenced pursuant to N.J.S.A. 2C:47-1 et seq. and 2A:164-1 et seq.," N.J.A.C. 10A:1-2.2, and includes a Therapeutic Community for sex offenders who have been found clinically eligible for the specific treatment program under the SOA. W.B. was placed in the Therapeutic Community with sex offenders found clinically eligible under the SOA. However, because W.B. was sentenced under New Hampshire's sex offender statute and not under the SOA, he was classified as a Not Under the Act (NUA) inmate. DOC has defined that term as one who is "not eligible for specialized treatment under N.J.S.A. 2C:47-3(h)." See Williams, supra, 423 N.J. Super. at 180.

Treatment updates for W.B. dated September 24, 2010, February 3, 2011, July 7, 2011, January 25, 2012, and October 23, 2012, which include updates before and after our decision in Williams, uniformly begin with a statement noting W.B. was not sentenced under the SOA "and therefore is not mandated to participate in the sex offender treatment program at the ADTC." Despite the lack of a mandate, W.B. voluntarily and actively participated in the One Wing Therapeutic Community, which was described as "the most intense level of treatment offered." His

progress in therapy was duly noted and, in February 2011, it was recommended that he advance from a Level III group to Phase II status.

Williams was decided in December 2011. In addition to holding that the Commissioner lacked authority to assign NUA inmates to the ADTC for treatment and housing with ADTC-eligible inmates, Williams, supra, 423 N.J. Super. at 189, we ordered the Commissioner to review the status of NUA inmates at the ADTC and "take the steps necessary to ensure that only ADTC-eligible offenders are incarcerated there, unless it is administratively feasible to establish a separate program" for the non-ADTC-eligible inmates at the ADTC. Ibid.

W.B. remained in the ADTC Therapeutic Community until April 4, 2012, when he was moved from a wing housing ADTC-sentenced inmates participating in the Therapeutic Community, and reassigned to a wing designated for NUA inmates. W.B. requested that a psychological examination be conducted of him so that his eligibility for sex-offender-specific treatment in the Therapeutic Community might be reconsidered. His request was denied on the ground that the requisite testing "could only be completed in response to a court order or as a courtesy to the [DOC], should they request it."

In May 2012, W.B. filed an Inmate Remedy System Form, challenging DOC's decision to classify him as an NUA inmate. He stated,

> Under the Interstate Compact, I am to be treated as if I had committed my offense in New Jersey. I am supposed to be participating in the same education and work programs as ADTC-sentenced inmates. It is the responsibility of the ADTC Administration to make available treatment programs consistent with my individual needs, as well as to ensure that my committing court's sentences and orders are faithfully executed.

In its response, the ADTC administration stated W.B.'s "assertion that the Compact is being violated is unfounded," that his "current housing is appropriate," and that he would be housed as NUA.[2] The administration suggested that W.B. could write to the Interstate Services at the Central Office regarding the provisions of the Compact.

The treatment update dated October 23, 2012 reported that, after W.B. was reassigned to a group for NUA inmates in April 2012, he participated in sex offender treatment. The update provided a review of that treatment for the period from June 25

___

[2]   W.B. submitted a similar complaint by another inmate transferred to the ADTC under the Compact with a response from the ADTC that allegedly contradicted the response to his Inmate Remedy System Form. However, conflicting statements within that response preclude any determination as to whether the response was contradictory.

through October 23, 2012, and identified his treatment goals for the next six months.

W.B. appealed from the administrator's decision. After that decision was upheld, he filed an appeal from the final agency decision and presents the following issues for our consideration:

> POINT I
>
> THE <u>WILLIAMS</u> RULING DID NOT DISCUSS HOW THE RULING SHOULD APPLY TO OUT-OF-STATE TRANSFERS, AND IS BEING APPLIED IMPROPERLY TO TRANSFERRED INMATES.
>
> POINT II
>
> THE DEPARTMENT'S DECISION TO APPLY <u>WILLIAMS</u> TO OUT-OF-STATE INMATES VIOLATES THE INTERSTATE COMPACT.
>
> POINT III
>
> APPELLANT HAS A LIBERTY INTEREST ATTACHED TO BEING OFFERED THE SAME SEX OFFENDER TREATMENT PROGRAM BEING OFFERED TO NEW JERSEY INMATES SENTENCED UNDER THE NEW JERSEY SEX OFFENDER ACT.

"The judicial capacity to review administrative agency decisions is limited." <u>Brady v. Bd. of Review</u>, 152 <u>N.J.</u> 197, 210 (1997). An appellate court can reverse only if the agency's decision was "arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." <u>Henry v. Rahway State Prison</u>, 81 <u>N.J.</u> 571, 579-80 (1980); <u>Brady</u>, <u>supra</u>, 152 <u>N.J.</u> at 210. "[I]nterpretations of

the statute and cognate enactments by agencies empowered to enforce them are given substantial deference. . . ." Williams, supra, 423 N.J. Super. at 182-83; (quoting Klumb v. Bd. of Educ. of the Manalapan-Englishtown Reg'l High Sch. Dist., 199 N.J. 14, 24 (2009)). However, an agency's interpretations "'cannot alter the terms of a legislative enactment nor can they frustrate the policy embodied in [a] statute.'" Williams, supra, 423 N.J. Super. at 183 (alteration in original) (citations omitted). Furthermore, "[a]n appellate tribunal is . . . in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973); see also Shim v. Rutgers, 191 N.J. 374, 384 (2007).

## II.

It is evident that the DOC's decision to move W.B. from the wing designated for ADTC inmates was prompted by our decision in Williams. Although we did not explicitly address the circumstances of an out-of-state sex offender who has been transferred to the custody of the DOC, our reasoning for the limitations upon the Commissioner's discretion to assign inmates to the ADTC remains applicable.

As we observed in Williams, the SOA "created a detailed sentencing program for certain types of sex offenders." 423

N.J. Super. at 178. Although we recognized the broad discretion and authority of the Commissioner to "designate as a place of confinement any available, suitable, and appropriate institution or facility" for an inmate and to transfer the inmate "at any time," id. at 181, we nonetheless found ourselves "constrained" to apply the legislatively mandated restrictions on the Commissioner's discretion and authority imposed by the specific language of the SOA. The program created by the legislature permits the confinement of an offender at the ADTC only if specific criteria are met: (1) the offender must be convicted of one of the SOA's enumerated offenses; (2) there must be a finding, following a psychological examination, that "the offender's conduct was characterized by a pattern of repetitive, compulsive behavior"; (3) the offender must be both amendable to sex offender treatment and willing to participate in such treatment; and (4) following review, a judge must confirm the requisite findings. N.J.S.A. 2C:47-1; N.J.S.A. 2C:47-3(a).

In In re Civil Commitment of W.X.C., 204 N.J. 179 (2010), cert. denied, __ U.S. __, 131 S. Ct. 1702, 179 L. Ed. 2d. 635 (2011), the Supreme Court compared the scope of the Sexually Violent Predators Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38 with that of the SOA, noting that the Legislature used "far narrower" defining statutory language in the SOA. W.X.C., supra, 204 N.J.

at 199. The Court found that, "[a]s defined by statute, ADTC treatment . . . is directed only at specific offenders" and further, that the treatment "is particularized and is designed to meet the needs of the specific population of sex offenders that it intentionally targets." <u>Id.</u> at 198. The Court described the Legislature's purpose and the practical considerations that influenced its reasoning:

> [W]hen creating the ADTC, the Legislature intentionally designed a program that could most effectively target a particular population that available treatment modalities could benefit. In that context, <u>making certain that the offenders admitted into the program are only those who meet the statute's diagnostic criteria is a critical ingredient in the program's success</u>. More to the point, the program operates with limited numbers of beds, for clinically significant reasons, and highly trained, but limited, numbers of personnel, with the result that it is <u>not appropriate to expand it to offenders . . . who do not meet the admission criteria</u>.

> [<u>Id.</u> at 199 (emphasis added).]

From the outset, W.B. was identified as an NUA inmate who had not been sentenced under the Act. Although W.B. pled guilty to offenses comparable to those enumerated in the SOA and has manifested his amenability and willingness to participate in sex offender treatment at the ADTC, he was not sentenced pursuant to the detailed sentencing program that required both a psychological determination and judicial confirmation, following

review, that he satisfied the statutory criteria. The legislative purpose in limiting ADTC treatment to a carefully targeted population of offenders, a "critical ingredient in the program's success," ibid., applies equally to a potential expansion of the ADTC program to him. As we have noted, the DOC has implemented a program of sex offender treatment for NUA offenders in which W.B. has participated. Particularly in light of our decision in Williams, it was not arbitrary, capricious, or unreasonable for the Commissioner to classify W.B. as an NUA inmate and designate his confinement accordingly.

### III.

We next consider W.B.'s argument that the Compact and the Contract for Services between the State of New Hampshire and the State of New Jersey for the Implementation of the Interstate Corrections Compact (the Contract) both require the DOC to treat him as an ADTC-eligible offender. He contends that the failure to provide him with treatment provided to ADTC-eligible offenders effectively alters his sentence, in violation of the Compact. He also argues that the Compact requires New Jersey to treat him as if he committed his offenses in New Jersey. We disagree with each of these propositions.

N.J.S.A. 30:7C-5(e) provides, in pertinent part, "All inmates who may be confined in an institution pursuant to the

provisions of this compact shall be treated in a reasonable and humane manner <u>and shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution</u>." (Emphasis added). Similarly, the Contract requires the receiving state "to make available to [transferred inmates] the programs of training and treatment which are consistent with their individual needs." However, Paragraph 12 of the Contract limits the scope of the obligation, stating,

> Nothing herein contained shall be construed to require the receiving state or any of its institutions to provide treatment, facilities, or programs for any inmate confined pursuant to the Interstate Corrections Compact which it does not provide for similar inmates of the receiving state.

The thrust of W.B.'s argument is that the "similar inmates of the receiving state" with whom he is on par are the ADTC-eligible offenders. As we have noted, although W.B. shares some of the attributes of ADTC-eligible offenders, he does not meet all the criteria established by the Legislature as prerequisites to ADTC status. Therefore, just as the DOC identified him at the outset, W.B. is similarly situated to the NUA offenders housed separately at the ADTC. We therefore conclude that no violation of the Compact has occurred by virtue of a failure to treat him equally with similar inmates in New Jersey.

W.B. was sentenced under New Hampshire's statutes, which govern "any matter relating to an inmate confined pursuant to" the Contract. See also N.J.S.A. 30:7C-5(c). He has identified no New Hampshire statute analogous to the SOA in terms of its specific and detailed sentencing program that would require New Jersey to afford him the treatment explicitly provided to offenders who satisfy the SOA criteria. Moreover, the actions of the DOC here did not derogate the sentence imposed upon him, which ordered him to "participate meaningfully and complete any counseling, treatment and educational programs as directed by the correctional authority or Probation/Parole Officer." Thus, the nature of sex offender treatment W.B. was to receive in New Hampshire as part of his sentence was to be determined by the correctional authority, not mandated by either a New Hampshire statute or the sentence imposed. The New Hampshire Department of Corrections referred him to its Sex Offender Treatment program. However, W.B. has not identified any recommended treatment that has not been provided to him in New Jersey.

Further, although not dispositive to our analysis, we note that the New Hampshire Department of Corrections rebuffed W.B.'s complaint that he was being denied treatment due him pursuant to the Compact. In a letter to W.B. dated June 27, 2012, the New

Hampshire Department of Corrections Administrator of Classification stated:

> It is our understanding that you are still being afforded the opportunity to participate in Sex Offender Programming. That is the word we have received from New Jersey. Although you may be housed separately due to recent litigation it has not affected your ability to continue programming. New Jersey is aware that you are required by New Hampshire to participate and satisfactorily complete Sex Offender Programming. They have received all pertinent information regarding you and your sentence and requirements prior to you going there.

In sum, we are satisfied that the Commissioner's actions here did not violate the Compact or the Contract.

IV.

Finally, W.B. argues that the disparity between the treatment he receives as an NUA inmate and that afforded ADTC-eligible offenders deprives him of a fundamental liberty interest and the equal protection of the laws. This argument lacks sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5490-11T3