**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2551-23

DARIUS HEIMER GITTENS,

    Appellant,

v.

NEW JERSEY STATE PAROLE
BOARD,

    Respondent.

_____

Submitted October 2, 2025 – Decided October 10, 2025

Before Judges Mawla and Puglisi.

On appeal from the New Jersey State Parole Board.

Darius Heimer Gittens, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Joseph D. Sams, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Darius Heimer Gittens appeals from a February 28, 2024 final agency decision by respondent the New Jersey State Parole Board (Board) denying him parole and imposing a twenty-month future eligibility term (FET). We affirm.

Gittens is serving an aggregate custodial sentence of seventeen years, with a mandatory minimum term of eight years for convictions on: second-degree unlawful taking, N.J.S.A. 2C:20-3(a); third-degree burglary, N.J.S.A. 2C:18-2(a)(1); third-degree criminal attempt of burglary, N.J.S.A. 2C:18-2(a)(1); and second-degree theft, N.J.S.A. 2C:20-2. His convictions arise from the more than twenty-five homes he and his co-defendant burglarized in Burlington County between October 2011 and September 2012. Prior to these crimes, Gittens had developed orthopedic issues while doing demolition work, for which he was prescribed oxycodone. He subsequently became addicted to oxycodone and heroin, which allegedly fueled his crimes.

On November 27, 2022, Gittens became eligible for parole after serving approximately seven years and one month of his sentence. A Board hearing officer conducted an initial hearing and referred the matter to a Board panel for review.

2

The Board panel conducted a hearing and inquired into Gittens's lack of participation in substance abuse treatment programs during his incarceration. Gittens stated he was "not addicted anymore" and did not want to "lie [his] way through a [treatment] program." He further stated:

> I'll never use drugs again. There's no reason to use them. I've got structure in my life that [I was] building towards [seventeen] years before I did this nonsense. I'm going to go right back to that point, except I'm [not] going to [work in] demolition and cleanup. And I'm going to [do] legal work[ and] office work. And if . . . I lost that job, I have disability now[,] which I didn't have. I had no fallback. I've sowed my oats. I'm not a wild, young idiot anymore.

The Board panel also discussed Gittens's parole plan to live and work in New York. However, it informed him that out-of-state parole is typically not approved unless the parolee would be residing with a relative, which he was not.

During the hearing, Gittens raised his rights under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13. Although his argument was unclear, he appeared to allege OPRA documents were taken from him, and he was told that he was not allowed to use OPRA to obtain "the names of all the officers in the prison," with which he disagreed.

Ultimately, the two-member Board panel denied parole and established a twenty-month FET. Gittens's criminal history included repetitive and

3

increasingly serious offenses. The Board panel also noted he had two institutional infractions, which included attempted escape and destruction of government property.

The Board panel's written decision cited the following reasons for denial: the facts and circumstances of the offenses, specifically multiple charges of second-degree theft; Gittens's extensive and repetitive prior offense record; his incarceration for multiple offenses; prior opportunities on parole failed to deter his criminal behavior, as did his prior incarcerations; his institutional infractions, which were "serious in nature," and resulted in "loss of commutation time" and "[a]dministrative [s]egregation"; and insufficient problem resolution, specifically his "lack of insight into [his] criminal behavior," his "minimiz[ation of his] conduct," and the fact that his "substance abuse problem has not been sufficiently addressed."

Gittens appealed from the Board panel's decision. He asserted it "failed to consider material facts," including his letter dated September 6, 2023, to mitigate information in the record about his substance abuse disorder.[1] The Board panel also "failed to document that a preponderance of the evidence indicates . . . [Gittens] failed to cooperate in his . . . own rehabilitation . . . or

---

[1] This letter is not contained in the record.

. . . that [he] will violate conditions of parole . . . if released." He contended the Board panel's decision was contrary to written Board policies and procedures and alleged there was "prejudice or bias."

The full Board affirmed. It found the Board panel's reasons for the denial of parole were proper, including:

> [the] facts and circumstances of [Gittens's] offense, specifically . . . [t]heft, second[-]degree (multiple charges); [his] prior offense record is extensive; [his] offense record is repetitive; . . . [the] nature of [his] criminal record [was] increasingly more serious; [he was] committed to incarceration for multiple offenses; [his] prior opportunities on parole have failed to deter criminal behavior; [his] prior incarcerations did not deter criminal behavior; and [his] institutional infractions are serious in nature and resulted in the loss of commutation time, confinement in [the] Administrative Segregation/Restorative Housing Unit . . . and is consistent with [his] prior criminal record . . . .

The Board concurred with the Board panel's finding that Gittens "exhibit[ed] insufficient problem resolution[,]" "lack[ed] insight into [his] criminal behavior," "minimize[d his] conduct[,]" and failed to "sufficiently address[]" his substance abuse. It found the Board panel had considered all the material facts, "reviewed [his] entire record in rendering its decision," and properly concluded Gittens's "institutional conduct is concerning" and that "he refuses to take responsibility for" his conduct. His psychological evaluation

5

concluded he was at medium risk to recidivate. Gittens's assertions the Board panel had violated Board policies and procedures were "without merit."

The Board also rejected the contention the Board panel had refused to consider the evidence he submitted regarding his substance abuse disorder. It found the Board panel reviewed the entire record, including the September 6 letter from Gittens, additional documents, medical records, and his parole plan. The electronic recording of the Board panel hearing confirmed it had considered all the evidence, including complaints Gittens made against the Department of Corrections, which he claimed led him to be charged with institutional infractions.

The Board rejected Gittens's OPRA violations claims. It noted a letter was mailed to him, addressing the time frame of his requests and advising him if he required additional copies of records he had provided to the Board, he could request them through his institutional parole counselor. He never made the request of the counselor.

The Board denied there was evidence of bias or improper conduct by any Board panel member. It had reviewed the electronic recording of the Board panel hearing and found no evidence of unprofessional conduct or "violation of the Board's Professional Code of Conduct." The Board panel questioned Gittens

on nearly all of the twenty-four factors in N.J.A.C. 10A:71-3.11(b), including his "infractions, criminal history, previous parole terms, mental health, parole plan, work history, program participation, relationships and goals in a professional manner[,] and the Board panel afforded [him] a significant opportunity to speak on several points [and] . . . listened to [his] answers as evidenced by the follow-up questions [it] posed."

In sum, the Board concluded the Board panel had "considered the aggregate of information pursuant to N.J.A.C. 10A:71-3.11 and fully documented and supported its decision pursuant to N.J.A.C. 10A:71-3.18(f)." The Board concurred with the Board panel's determination "that a preponderance of the evidence [showed] there is a reasonable expectation that [Gittens] would violate the conditions of parole if released."

I.

On appeal, Gittens argues there were acts or omissions by Board panel members Robert Goodale and Keri Cody, which violated his right to a fair hearing. He asserts Goodale refused to allow him to discuss mitigating circumstances to rebut the evidence of his institutional infractions. Goodale did not read the evidence he presented and "intentionally falsely stated that it was against the law for [Gittens] to access and possess [OPRA] records." He claims

this was fraudulent conduct in which Cody also participated through her acquiescence.

Gittens argues Goodale had "a personal interest, prejudice[,] and bias that violates [the] . . . Board's Code of Ethics," namely, the prohibition on board members acting in their "official capacity in any matter wherein [they] ha[ve] a direct or indirect personal or financial interest that might reasonably be expected to impair [their] objectivity or independence of judgment."  He asserts this is proved by the fact Goodale refused to consider Gittens's "advanced age and disabilities" as evidence of reduced recidivism and mitigating factors "favoring release to parole supervision."

Goodale also refused to address the evidence of Gittens's growth and maturity, including that no corrections staff stated Gittens would violate parole. Gittens claims Goodale improperly relied on flawed risk assessment results, and the Board used the assessment selectively.

Gittens suggests Goodale allowed Cody to "pretend[] . . . [Gittens] was not allowed to parole out of state in . . . New York to work at [a l]aw [f]irm . . . and reside [with a friend] and [friend's wife in their] studio apartment, and would [instead] need another parole plan."  Goodale "knew that no investigation of that parole plan had taken place."  Cody also violated the law and procedure when

8

she "seed[ed] the hearing record with intentionally false and[/]or misleading statement[s] . . . to deter [Gittens] from . . . [his] perfect parole plan."

Gittens alleges the record showed he had successfully completed parole supervision on three prior occasions. He asserts he is "an old man" who has "a perfect prior record of success on parole" and he "has aged out and is disabled." Indeed, at "months shy of [sixty-five-]years-old[, he] has [a] 4.1 percent rate of re-incarceration[,] and . . . the same statistical [likelihood] of opioid addiction." Therefore, the Board lacked the evidence to deny him parole.

Gittens argues the Board failed to explain its decision. He believes this is evidence it "never actually evaluated any of the substantial record on appeal."

II.

Appellate review of parole determinations "focuses upon whether the factual findings made by the . . . Board could reasonably have been reached on sufficient credible evidence in the record." Trantino v. N.J. State Parole Bd., 166 N.J. 113, 199 (2001) (Trantino II), (Baime, J., dissenting) (citing Trantino v. N.J. State Parole Bd., 154 N.J. 19, 24 (1998) (Trantino I)). "To a greater degree than is the case with other administrative agencies, the . . . Board's decision-making function involves individualized discretionary appraisals." Id. at 201 (citing Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 358-59 (1973)).

A-2551-23

"We may overturn the . . . Board's decisions only if they are arbitrary and capricious. 'Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of circumstances.'" Ibid. (quoting Worthington v. Fauver, 88 N.J. 183, 204-05 (1982)). We consider whether the Board followed the law, there was substantial evidence to support its findings, and in applying the law to the facts, the Board "clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors." Trantino I, 154 N.J. at 24 (citing Brady v. Dep't of Pers., 149 N.J. 244, 256 (1997)).

On questions of law, we owe the Board considerable deference in interpreting its regulations. US Bank, N.A. v. Hough, 210 N.J. 187, 200 (2012) (citing In re Election L. Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). An agency's interpretation of its regulations, however, "cannot alter the terms of a legislative enactment nor can they frustrate the policy embodied in [a] statute." Williams v. N.J. Dep't of Corr., 423 N.J. Super. 176, 183 (App. Div. 2011) (alteration in original) (quoting N.J. Ass'n of Realtors v. N.J. Dep't of Env't Prot., 367 N.J. Super. 154, 159-60 (App. Div. 2004)). "Ultimately, reviewing courts are not 'bound by the agency's interpretation of a statute.'" Ibid. (quoting Shim v. Rutgers, 191 N.J. 374, 384 (2007)) (internal

quotation marks omitted). This includes instances where "the agency's action offends the United States Constitution or the State Constitution." In re Eastwick Coll. LPN-to RN Bridge Program, 225 N.J. 533, 541 (2016).

The Board is "charged with the responsibility of deciding whether an inmate satisfies the criteria for parole release under the Parole Act of 1979." In re Application of Hawley, 98 N.J. 108, 112 (1984) (citing N.J.S.A. 30:4-123.45 to -123.69). It makes "highly predictive and individualized discretionary appraisals." Beckworth, 62 N.J. at 359. "Those appraisals must realistically be recognized to be inherently imprecise, as they are based on 'discretionary assessment[s] of a multiplicity of imponderables, entailing primarily what a [parolee] is and what [they] may become rather than simply what [they] ha[ve] done.'" Acoli v. N.J. State Parole Bd., 224 N.J. 213, 222 (2016) (first alteration in original) (quoting Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 10 (1979)). The Board is tasked with predicting an inmate's future behavior, a decision fraught with swift subjectivity and afforded broad discretion. Puchalski v. N.J. State Parole Bd., 104 N.J. Super. 294, 300 (App. Div. 1969).

"Parole decisions shall be based on the aggregate of all pertinent factors, including material supplied by the inmate and reports and material which may

11

be submitted by any persons or agencies which have knowledge of the inmate." N.J.A.C. 10A:71-3.11(a). The Board considers the twenty-four factors enumerated in N.J.A.C. 10A:71-3.11(b), "and, in addition, may consider any other factors deemed relevant." "There is no requirement for the Board to consider each and every factor enumerated in the Administrative Code. Rather, the Board must consider the factors applicable in each case." McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 561 (App. Div. 2002).

Pursuant to these principles and having considered the record, we reject Gittens's arguments and affirm substantially for the reasons expressed in the Board's written decision. We add the following comments.

Like the Board, we find no support for the claims that the Board panel failed to consider evidence, misapplied OPRA, and engaged in unethical conduct in reaching its parole decision. Gittens's quarrel is, in part, a dissatisfaction with how the Board panel weighed the evidence. However, this does not mean the parole denial decision was arbitrary, capricious, or unreasonable, nor was it a misapplication of law. As we recounted, the Board panel and the Board followed N.J.A.C. 10A:71-3.11 and considered the evidence applicable to the regulation's multiple factors.

The Board panel and Board considered and discussed the evidence Gittens submitted in mitigation. This included his September 6, 2023 letter, additional documents, medical records, and parole plan. The Board panel and Board also considered that "all opportunities on community supervision [were] completed without violations; [Gittens's] participation in institutional programs; [his] institutional reports reflect [a] favorable institutional adjustment; [an] attempt [was] made to enroll and participate in programs[,] but [Gittens] was not admitted; and commutation time restored."

The Board's conclusion, the facts evidenced a reasonable expectation Gittens would violate the conditions of parole if released, was not arbitrary, capricious, or unreasonable. Gittens received the standard FET required by N.J.A.C. 10A:71-3.21(a)(3), and no evidence showed the Board needed to deviate from the standard FET as permitted by N.J.A.C. 10A:71-3.21(c). The Board's decision "is supported by sufficient credible evidence on the record as a whole." R. 2:11-3(e)(1)(d).

We reject Gittens's OPRA-related argument. Despite OPRA's role in assuring government records are readily accessible, the statute contains certain limitations. N.J.S.A. 47:1A-1. With slight exception, N.J.S.A. 47:1A-10 shields from disclosure "personnel or pension records of any individual in the

possession of a public agency." However, "an individual's name, title, position, salary, payroll record, length of service, date of separation and the reason therefor, and the amount and type of any pension received shall be a government record" subject to disclosure. Ibid. Our difficulty is that Gittens's brief does not discuss how OPRA was violated, or even if there was such a violation, how the violation itself or the records he sought related to the parole proceedings and the Board's parole decision.

Gittens's argument, Goodale and Cody were biased or committed ethics violations, lacks merit. We have reviewed the record and find no evidence to support these claims. Gittens's brief offers us no help because it does not point to the alleged impropriety in the record. Parties have a "responsibility to refer [the court] to specific parts of the record . . . [and] may not discharge that duty by inviting [the court] to search through the record [itself]." Spinks v. Twp. of Clinton, 402 N.J. Super. 465, 474-75 (App. Div. 2008).

Gittens's claims regarding the failure to consider his age were not raised during the parole proceedings. Regardless, the record shows his age was a known fact and did not undercut the several other reasons the Board cited to deny him parole and establish the twenty-month FET.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

14

A-2551-23