**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0458-23

STEPHEN D. PERRY,

      Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

      Respondent.

_____

          Submitted June 5, 2025 – Decided June 13, 2025

          Before Judges Mawla and Vinci.

          On appeal from the New Jersey State Parole Board.

          Stephen D. Perry, appellant pro se.

          Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Dorothy M. Rodriguez, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Stephen D. Perry appeals from an August 30, 2023 final decision by respondent the New Jersey State Parole Board (Board) denying parole and imposing a seventy-two-month future eligibility term (FET). We affirm.

Perry has been serving a life sentence for murdering a police officer. We incorporate by reference our prior recitation of the underlying facts involving Perry's crimes and history of incarceration from Perry v. New Jersey State Parole Board, No. A-1338-17 (May 16, 2019). This appeal involves Perry's fifth parole hearing. However, the genesis of the issues raised in this appeal involve his fourth parole hearing.

In April 2022, Perry became eligible for parole for the fourth time and had his initial case assessment before a hearing officer. The hearing officer referred the matter to a two-member Board panel, which denied parole and referred the matter to a three-member Board panel to establish an FET outside of the administrative guidelines. The Board panel based its decision on a multitude of factors, including Perry's: infraction-free status since the last parole hearing; participation in programs specific to behavior; participation in institutional programs; institutional reports reflecting favorable institutional adjustments; achieving/maintaining minimum custody status; and restored commutation time.

2

In July 2022, a two-member Board panel reconvened and voted to vacate the April decision because it did not reflect the necessary information in the record or list the pertinent reasons for the denial of parole. Accordingly, the Board vacated the Board panel's decision and scheduled a de novo initial hearing.

In October 2022, the hearing officer issued an updated initial hearing case assessment. It included changes to Perry's time served, risk assessment score, offenses summary, prior adjudications/convictions, prior incarcerations, prior probation/parole history, program participation, and the factors considered.

On November 4, 2022, a Board panel conducted a de novo hearing to evaluate whether Perry had gained an understanding into his criminal thinking beginning as a juvenile and continuing throughout his incarceration. The Board panel discussed details of: Perry's prior and present offenses; his criminal-thinking and conduct related to his crimes; his lifestyle, social, and personal choices that led to his extensive and repetitive offense record; whether he participated in programs that may have provided insight into his criminal thinking and conduct; and whether he had a viable parole plan.

Perry attributed his criminal actions to his father's declining health and subsequent death in 1974. This caused him to spiral "into a life of crime and

3

drugs and hanging out in the streets . . . with older guys and experimenting" with drugs. He used drugs to "numb[ his] feelings, hurt, [and the] pain [he] was experiencing from watching [his] father's health deteriorate." Perry funded his drug habit by "committing crime."

The Board panel also asked Perry about his criminal conduct, which escalated in October 1978 to more serious offenses, including possessing a handgun, a stolen car, and assaulting a police office. He responded, "my drug addiction just took over me, took control of me, consumed me." Perry further suggested his use of drugs and criminal conduct were influenced by his older associates, who taught him how to commit crimes, including check forgery.

The Board panel also discussed Perry's most recent offenses. It noted when he was free on bail, he burglarized a home and shot a plain-clothes police officer. Perry responded he was under the influence of heroin when he committed the crime, did not realize the person he shot was a police officer, and the gunshot "struck the police officer's watch and ricocheted into his body." He added that he was initially in denial about shooting the officer but after forty-three years, realized he had to "let go of the past."

The Board panel also questioned Perry about the murder for which he is presently incarcerated. Perry provided details about his actions leading up to

the murder, but also testified the officer was inebriated and remained close to his bed, as opposed to outside his hospital room. He alleged the officer would not stop antagonizing him, and repeatedly threatened that once Perry was transferred to county jail, he would suffer repercussions for shooting a police officer. Perry then described how he fought and ultimately killed the officer with his own weapon.

Perry asserted he "took responsibility for [the murder] from day one." However, the record reflected he initially pled not guilty. When the Board panel disputed his testimony, Perry then clarified, "three . . . days into my trial[,] I stopped the trial and in open [c]ourt admitted what I did."

The Board panel noted Perry appeared relatively healthy. Perry provided information regarding his medical condition, which resulted from receiving tattoos and needle sharing during drug use. He added he is no longer abusing drugs, stating: "I've been clean fifteen . . . years now . . . that part of my life is gone."

The Board panel asked Perry about his future parole plan to determine how he would support himself and his plan for employment. Perry indicated he planned to pursue a re-entry program.

A-0458-23

The Board panel's decision considered: the facts and circumstances of the murder offense; Perry's extensive prior offense record; that his offense record is repetitive; the increasingly more serious nature of his criminal record; his incarceration for multiple offenses; the prior and current opportunities he had for probation and parole, which were terminated due to the commission of new offenses; new offenses committed while on community supervision that did not formally terminate probation and parole; prior opportunities on community supervision that failed to deter criminal behavior; prior opportunities on community supervision terminated for technical violations; current opportunities on community supervision terminated in the past for technical violations; the failure to report, maintain employment, and new arrests; prior incarcerations that did not deter criminal behavior; Perry's numerous, persistent, and serious disciplinary infractions, resulting in the loss of commutation time and confinement in detention or administrative segregation, with the most recent infraction being refusing to obey, in violation of N.J.A.C. 10A:4-4.1(a)(2)(xvii); insufficient problem resolution; the lack of adequate parole plan to assist in successful reintegration into the community; the commission of current offenses; and a risk assessment evaluation and score of thirty-two, indicating a

6

high risk of recidivism. These factors mirrored those set forth in N.J.A.C. 10A:71-3.11(b).

Citing the insufficient problem/resolution factor, the Board panel found Perry's "posture show[ed] and reflect[ed] a personality that [was] likely to make him unwilling to follow the rules and laws of whatever society he finds himself in." The Board panel considered mitigating factors, including Perry's: infraction-free status since the last panel hearing; participation in programs specific to behavior; participation in institutional programs; institutional reports reflecting favorable institutional adjustments; attempts to enroll and participate in programs; achieving and maintaining minimum custody status; and commutation time restored.

Ultimately, the Board panel denied parole and referred the matter to a three-member panel to establish an FET outside of the administrative guidelines. Perry submitted a letter of mitigation. On February 1, 2023, a three-member Board panel convened and established a seventy-two-month FET. It pointed to Perry's insufficient problem/resolution as a major factor in its decision, and made the following findings in support of the seventy-two-month FET:

> You do not understand the motivations that encouraged you to think and behave as a criminal, beginning when you were fourteen . . . years old. At the hearing[,] you cited the causes to your criminal behavior as . . .

A-0458-23

emotional issues due to . . . witnessing your father die slowly in front of you from cancer. You also cited drug abuse and the need to commit property[-]related offenses to support your drug habit. You did not expound on those factors in any detail. You did add that the individuals of a criminal element that showed you the way[,] so to speak, were much older than you. These men also introduced you to hardcore drug abuse. You articulated no understanding as to why you sought out negative father figure individuals to be in your life. This is an extremely important detail considering your father was ill and needed your support. . . . You also present as not recognizing the significant impact that your drug abuse had on your criminality. Perhaps it makes you feel better to mitigate your criminal behavior by citing your father's health decline. Your criminality was clearly to support a drug habit of a significant magnitude. You need to develop an understanding why your drug abuse led to further crime instead of reaching out for help. You must also develop an[] understanding as to why terminating the sheriff officer's life was the only solution to a situation of conflict . . . .

You previously completed programs that possibly could have assisted you in gaining insight into your criminal thinking. You have completed programs regarding cognitive and behavioral programming, with multiple completions for several of the programs. However, since your last parole hearing[,] the only program you participated in was . . . an adult academic program. As noted, the Board panel finds that you continue to lack clarity to the motivations that led you to behave in a criminal manner beginning when you were a teenager. Currently, you mix together a combination of several details you have formulated, but the details you provide are not cohesive and do not make sense. The Board panel finds that you are an

8

individual who believes he has insight, when in fact you have further work to do.

The three-member Board panel found Perry lacked insight into his impulsive nature and the ability to deal with confrontation, such as when he murdered the officer because he felt the officer was antagonizing him. It found this same impulsive nature carried into his adulthood, evidenced by the fact he committed drug-related offenses twenty-two years into his incarceration, resulting in a consecutive term of incarceration.

Perry appealed to the Board. He raised ten points, including the following points relevant to this appeal: lack of insight was an inappropriate consideration; the Board panel relied on the same set of historical facts, and only examined "old information"; the Board should remand for a more in-depth psychiatric examination to consider Perry's youthfulness at the time of his offense as a mitigating factor; the Board Panel failed to consider his current age as a factor favoring parole; and the Board panel erred when it found he lacked an adequate parole plan.

On August 30, 2023, the Board issued a detailed written decision addressing Perry's arguments. It concluded there was a substantial likelihood that Perry would commit another crime if released on parole. The Board upheld

9

the rulings denying parole and establishing the FET and rejected Perry's arguments as without merit.

The Board rejected the argument the Board panel considered the same historical information. It noted N.J.S.A. 30:4-123.56(c) required "consideration of the entire record at each instance of parole consideration." Among other factors, this included his previous convictions, the facts and circumstances of his offenses, and the aggravating and mitigating circumstances surrounding those offenses. The Board recounted Perry's lengthy prior criminal history, "very limited employment history and . . . extensive poly-substance abuse history starting at age fifteen." It noted he was "afforded numerous opportunities on probation and parole and ha[d] adjusted poorly as evidenced by [his] repeated violations and return to custody."

The Board rejected Perry's argument that lack of insight was not a consideration in deciding whether to grant parole and the imposition of the FET. It pointed out insight or lack thereof into "violent criminal behavior is subsumed within at least . . . N.J.A.C. 10A:71-3.11(b)[(11), (12), (13), and (17),]" which respectively require the Board to consider:

> documented changes in attitude toward[s] self or others[;] . . . documentation reflecting personal goals, personal strengths[,] or motivation for law-abiding behavior[;] . . . [m]ental and emotional health[; and] . . .

> [s]tatements by the inmate reflecting on the likelihood that [they] will commit another crime; the failure to cooperate in [their] own rehabilitation; or the reasonable expectation [they] will violate conditions of parole.

The Board also noted N.J.A.C. 10A:71-3.11(b) does not limit a Board panel to the factors enumerated in that regulation, and a Board panel is free to consider other factors it deems relevant.

In Perry's case, the Board panel concluded he lacked the insight necessary to be paroled based on its interview of him and review of his file. The Board observed that, despite being incarcerated for forty-three years, Perry did not understand what motivated him to "to think and behave as a criminal" from the young age of fourteen. Although Perry blamed his criminality on emotional issues of seeing his father die from cancer, drug use, and the need to commit crimes to pay for the drugs, he failed to expound on these factors. He also blamed his situation on associating with older men who introduced him to drugs, but "articulated no understanding as to why [he] sought out negative father figure individuals to be in [his] life, especially since [his] father was ill and needed [his] support."

Although Perry had previously completed programs to assist him with insight into his criminality, and cognitive and behavioral programming, he had

failed to continue with them since his last parole hearing and only completed an academic program. Given that Perry "lacked clarity" into the motives for his criminality, the Board concluded he "may benefit from additional programming to address [his] criminal thinking."

The Board rejected Perry's argument the FET was excessive and noted that based on reductions due to commutation, work, and custody credits his projected parole eligibility date is May 27, 2026. This made it "imperative" that in the intervening period he "participate in and complete programming to address [his] criminal behavior[,] . . . decision-making process, . . . substance abuse history, and that [he] continue to abide by the Department of Corrections' rules and regulations." The Board's reference to abiding by rules and regulations was because Perry had committed institutional infractions during his time in prison, including as recently as August 2017.

The Board rejected Perry's assertion the parole decision had not considered his youthfulness at the time of his offense, requiring a remand for a renewed psychiatric evaluation. It noted there was an "in-depth psychological evaluation . . . on September 22, 2022," which "addressed [his] 'youthfulness, immaturity, and decision-making ability' during the time of [his] criminal offenses."

A-0458-23

Likewise, Perry's current age was "a matter of record." The hearing officer had it when they conducted Perry's initial hearing, and the information was available to the Board panel when it conducted its review. The Board observed that given Perry's youthfulness when he committed his offenses, "the Board panel needed to assess whether [he] achieved a level of maturity that would have a positive impact on [his] suitability for parole release." The Board panel's assessment revealed Perry continued "to have issues that need to be addressed and that after forty-three . . . years of incarceration [he had] not achieved an adequate understanding of [his] thought process and the impact of same on [his] criminal conduct."

## I.

Perry raises the following points on appeal:

POINT I

THE "ALL INFORMATION" PROVISION UNDER [N.J.S.A.] 30:4-123.56 THAT EMPOWERS THE . . . BOARD TO EXAMINE OLD INFORMATION DURING SUCCESSIVE PAROLE HEARINGS VIOLATES EX-POST FACTO LAW.

POINT II

THE BOARD'S USE OF LACK OF INSIGHT AS A FACTOR TO DENY PAROLE RESULTED IN A DENIAL OF DUE PROCESS.

A-0458-23

POINT III

[PERRY] WAS DENIED DUE PROCESS WHERE FUNDAMENTAL FAIRNESS REQUIRED GREATER PROCEDURAL PROTECTIONS REGARDING THE BOARD'S IMPOSITION OF AN EXTENDED [FET].

POINT IV

DUE PROCESS REQUIRES A REMAND TO PERMIT AN IN-DEPTH PSYCHOLOGICAL EVALUATION ON [PERRY'S] YOUTH[]FULNESS AT THE TIME OF HIS OFFENSES.

POINT V

THE . . . BOARD'S FAILURE TO CONSIDER [PERRY'S] AGE WHEN EVALUATING HIS PAROLE ELIGIBILITY RESULTED IN A DENIAL OF DUE PROCESS.

POINT VI

THERE WAS A DENIAL OF DUE PROCESS WHERE THE . . . BOARD CITED "LACK OF AN ADEQUATE PAROLE PLAN" AS A FACTOR IN THE DENIAL OF PAROLE.

II.

Appellate review of parole determinations "focuses upon whether the factual findings made by the . . . Board could reasonably have been reached on sufficient credible evidence in the record." Trantino v. N.J. State Parole Bd., 166 N.J. 113, 199 (2001) (Trantino II) (Baime, J., dissenting) (citing Trantino

v. N.J. State Parole Bd., 154 N.J. 19, 24 (1998) (Tarantino I)). "To a greater degree than is the case with other administrative agencies, the . . . Board's decision-making function involves individualized discretionary appraisals." Id. at 201 (citing Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 358-59 (1973)).

"We may overturn the . . . Board's decisions only if they are arbitrary and capricious. 'Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of circumstances.'" Ibid. (quoting Worthington v. Fauver, 88 N.J. 183, 204-05 (1982)).

"[A] reviewing court is obligated to 'determine whether [the Board's] factual finding could reasonably have been reached on sufficient credible evidence in the whole record.'" Id. at 172 (quoting Trantino I, 154 N.J. at 24). We consider whether the Board followed the law, there was substantial evidence to support its findings, and whether in applying the law to the facts the Board "clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors." Trantino I, 154 N.J. at 24 (citing Brady v. Dep't of Pers., 149 N.J. 244, 256 (1997)).

On questions of law, we owe the Board "considerable deference" interpreting its regulations. US Bank, NA v. Hough, 210 N.J. 187, 200 (2012)

(quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). An agency's interpretation of its regulations, however, "cannot alter the terms of a legislative enactment nor can they frustrate the policy embodied in [a] statute." Williams v. N.J. Dep't of Corr., 423 N.J. Super. 176, 183 (App. Div. 2011) (alteration in original) (quoting N.J. Ass'n of Realtors v. N.J. Dep't of Envtl. Prot., 367 N.J. Super. 154, 159-60 (App. Div. 2004)). "Ultimately, reviewing courts are not 'bound by the agency's interpretation of a statute.'" Ibid. (quoting Shim v. Rutgers, 191 N.J. 374, 384 (2007)). This includes instances where "the agency's action offends the United States Constitution or the State Constitution." In re Eastwick Coll. LPN-to RN Bridge Program, 225 N.J. 533, 541 (2016).

The Board is "charged with the responsibility of deciding whether an inmate satisfies the criteria for parole release under the Parole Act of 1979." In re Application of Hawley, 98 N.J. 108, 112 (1984) (citing N.J.S.A. 30:4-123.45 to -123.69). It makes "highly predictive and individualized discretionary appraisals." Beckworth, 62 N.J. at 359. "Those appraisals must realistically be recognized to be inherently imprecise, as they are based on 'discretionary assessment[s] of a multiplicity of imponderables, entailing primarily what a [parolee] is and [they] may become rather than simply what [they have] done.'"

16

Acoli v. N.J. State Parole Bd., 224 N.J. 213, 222 (2016) (first alteration in original) (quoting Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 10 (1979)). The Board is tasked with predicting an inmate's future behavior, a decision fraught with swift subjectivity and afforded broad discretion. Puchalski v. N.J. State Parole Bd., 104 N.J. Super. 294, 300 (App. Div. 1969).

"Parole decisions shall be based on the aggregate of all pertinent factors, including material supplied by the inmate and reports and material which may be submitted by any persons or agencies which have knowledge of the inmate." N.J.A.C. 10A:71-3.11(a). In making parole determinations, the Board considers the twenty-four factors enumerated in N.J.A.C. 10A:71-3.11(b), "and, in addition, may consider any other factors deemed relevant." "There is no requirement for the Board to consider each and every factor enumerated in the Administrative Code. Rather, the Board must consider the factors applicable in each case." McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 561 (App. Div. 2002).

When a Board panel denies parole to an inmate serving a sentence for murder, the standard FET is twenty-seven months under N.J.A.C. 10A:71-3.21(a)(1). The Board, in its discretion, may add or reduce the standard FET by

nine months. N.J.A.C. 10A:71-3.21(c). But under N.J.A.C. 10A:71-3.21(d), a Board panel may establish an FET outside of these guidelines if the presumptive FET "is clearly inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior." In doing so, the Board shall consider the same non-exhaustive factors used to determine parole eligibility enumerated in N.J.A.C. 10A:71-3.11(b).

Pursuant to these principles and having considered the record, we reject Perry's arguments and affirm substantially for the reasons expressed in the Board's written decision. As we recounted, the Board was required to consider: all the facts regardless of their vintage; Perry's lack of insight; his youthfulness and present age; and his parole plan. Perry's quarrel with the Board's decision is in part a dissatisfaction with how it weighed the evidence and a disagreement with the express language of the applicable regulations governing parole and FET considerations. However, this does not mean the Board's decision was arbitrary, capricious, or unreasonable, nor was it a misapplication of law. The Board's decision is supported by sufficient credible evidence on the record as a whole. R. 2:11-3(e)(1)(d). Perry's arguments otherwise in Points I through VI lack merit.

Finally, Perry did not raise the due process and ex post facto arguments, which now color the arguments regarding the: evidence the Board could consider; lack of insight; FET; youthfulness and present age; and parole plan. We do not consider questions or issues not properly raised before the Board "unless the questions . . . raised on appeal go to the jurisdiction of the [Board] or concern matters of great public interest." Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).

Perry had the ability to raise his ex post facto and due process arguments before the hearing officer, the Board panel, and the Board. He did not. These arguments do not warrant our review for the first time on appeal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

19                                                                    A-0458-23